

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| CUIDADO CASERO HOME HEALTH OF EL PASO, INC., | § | No. 08-11-00332-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 448th Judicial District Court |
| | § | |
| AYUDA HOME HEALTH CARE SERVICES, LLC, EDWING A. MARTINEZ, LIZETTE MARTINEZ, JESUS R. RODRIGUEZ, AND OLGA L. RODRIGUEZ, | § | of El Paso County, Texas |
| | § | (TC#2009-727) |
| | § | |
| Appellees. | § | |

## **O P I N I O N**

Appellant, Cuidado Casero Home Health of El Paso Inc., appeals from a grant of a summary judgment in favor of Appellees, Ayuda Home Health Care Services LLC ("Ayuda Home Health"), Edwing A. Martinez, Lizette Martinez, Jesus R. Rodriguez, and Olga L. Rodriguez. Appellant raises four issues on appeal. We affirm in part and reverse and remand in part.

## **BACKGROUND**

Appellant is a home health care agency that provides home health care, hospice care, and primary care to patients in the city of El Paso. Appellees Edwing A. Martinez, Lizette Martinez,

Jesus R. Rodriguez, and Olga L. Rodriguez are former employees of Appellant.[1]  During their employment with Appellant, Appellees had access to Appellant's confidential business information and medical records.  While still employed by Appellant, Appellees made plans to compete against Appellant and took active steps to do so by forming Ayuda Home Health, a home health care agency.  Appellees did not disclose these plans to Appellant.  Shortly before or after Appellees resigned from their jobs with Appellant on February 5, 2009, Appellees discharged approximately thirty patients from Appellant's care.

That same month, Appellant sued Appellees for misappropriation of trade secrets, breach of contract, breach of fiduciary duty, tortious interference, conversion, and disgorgement.  In particular, Appellant's claims asserted that Appellees misappropriated Appellant's confidential and proprietary information for their own commercial use in the form of client lists, supplier lists, client contact information, policy and procedure and employee manuals, and procedure forms.  Appellant alleged that Appellees had induced Appellant's clients to transfer to Ayuda Home Health and, as a result, Appellant suffered lost profits.

In part, Appellees answered the suit with a general denial and asserted counterclaims against Appellant.  In December 2010, Appellee Olga L. Rodriguez moved for summary judgment on no-evidence and traditional grounds as to all of Appellant's claims.  The other Appellees jointly filed a motion for summary judgment in March 2011 asserting no-evidence and traditional grounds.[2]  Appellant filed separate responses to each summary judgment motion.

---

[1] Appellees worked in the following positions at different times during their employment with Appellant:  Edwing A. Martinez was a field nurse and Director of Nursing; Jesus R. Rodriguez was a field nurse and Assistant Director of Nursing; Lizette Martinez and Olga L. Rodriguez were field nurses.

[2] We note that unlike Appellee Olga L. Rodriguez' no-evidence motion for summary judgment, these Appellees' challenged the damages element of each of Appellant's causes of action in their no-evidence motion for summary judgment.  Whereas, Rodriguez only challenged the damages element of Appellant's claim for misappropriation of trade secrets.

2

The trial court granted all motions for summary judgment without specifying the grounds upon which it relied. Appellees subsequently nonsuited their counterclaims against Appellant, which were dismissed without prejudice, and this appeal ensued.

## DISCUSSION

Appellant raises four issues for our consideration, each alleging that the trial court erred in granting Appellees' summary judgment motions.

### Standard of Review

We review a trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Our review is limited to consideration of the evidence presented to the trial court. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App. – Houston [14th Dist.] 2007, no pet.). When a summary judgment fails to specify the grounds that the trial court relied upon for its ruling, we may affirm the judgment if any of the grounds advanced is meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Prize Energy Resources, L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 556 (Tex. App. – San Antonio 2011, no pet.).

A no-evidence motion for summary judgment is essentially a pretrial motion for directed verdict, and we apply the same legal sufficiency standard. *Gray v. Woodville Health Care Center*, 225 S.W.3d 613, 616 (Tex. App. – El Paso 2006, pet. denied). Accordingly, we review the evidence in the light most favorable to the nonmovant and disregard any contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). A movant for a no-evidence summary judgment must state which essential elements are without any evidentiary support. *Aguilar v. Morales*, 162 S.W.3d 825, 834 (Tex. App. – El Paso 2005, pet. denied). The

3

nonmovant must then produce evidence raising a genuine issue of material fact on each challenged element. TEX. R. CIV. P. 166a(i); *Aguilar*, 162 S.W.3d at 834. The nonmovant meets his burden when he produces more than a mere scintilla of evidence supporting each challenged element. *See Gray*, 225 S.W.3d at 616. More than a scintilla of evidence exists when the evidence would permit reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc.*, 118 S.W.3d at 751.

However, less than a scintilla of evidence exists when the evidence is so weak that it does no more than create a surmise or a suspicion of a fact. *Id.* A fact question exists when the summary judgment record contains inconsistent or conflicting summary judgment proof. *Rankin v. Union Pac. R. Co.*, 319 S.W.3d 58, 67 (Tex. App. – San Antonio 2010, no pet.). When a nonmovant presents more than a scintilla of probative evidence that raises a genuine issue of material fact, a no-evidence summary judgment is improper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *compare Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (trial court properly granted summary judgment where plaintiffs failed to produce more than a scintilla of evidence on an essential element of their claim).

A party seeking a traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Diversicare Gen. Partner., Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). If the movant meets this burden, the burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on

4

that claim. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 509 (Tex. 2010).

## UNCHALLENGED RULINGS

As an initial matter, Appellees point out that although Appellant has challenged the summary judgment in its entirety, Appellant does not challenge the summary judgment as to its tortious interference claim on appeal. Therefore, Appellees assert that the grounds raised to defeat Appellant's claim must be presumed to be valid. Appellant concedes that is has not challenged the summary judgment on its claim for tortious interference. Where the trial court's order does not state the basis for granting summary judgment, appellant must show that none of the grounds proposed support the judgment granted. *Harris v. Ebby Halliday Real Estate, Inc.*, 345 S.W.3d 756, 759 (Tex. App. – El Paso 2011, no pet.) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)). When a summary judgment ground goes unaddressed, its validity is presumed. *See id*. Because Appellant has failed to challenge the summary judgment on its tortious interference claim, we presume the grounds raised to defeat that claim are valid. *See id*. Therefore, we affirm the trial court's summary judgment in favor of Appellees as to Appellant's claim for tortious interference.

For the same reasons, Appellees also contend that the validity of the grounds raised as to Appellant's request for disgorgement must also be true. However, disgorgement is not a cause of action, but an equitable remedy applied to breaches of fiduciary duty. *See Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 821 (Tex. App. – Dallas 2008, no pet.). Rule 166a(i) authorizes a party to move for a no-evidence motion for summary judgment when there is no evidence of one or more essential elements of a claim or defense on which an adverse party has the burden of proof. *Id*. The rule does not contemplate a motion for summary judgment regarding

5

an equitable remedy applied to a claim. *See* TEX. R. CIV. P. 166a(i). Here, Appellant challenges the summary judgment on its breach of fiduciary duty claim and therefore, the remedy of disgorgement would still be available to Appellant if it prevails on a claim for breach of fiduciary duty. *See Goeth v. Craig, Terrill & Hale, L.L.P.*, No. 03-03-00125-CV, 2005 WL 850349, at \*7 (Tex. App. – Austin Apr. 14, 2005, no pet.) (memo op.) (a claimant is entitled to disgorgement, a derivate remedy, only upon proof of breach of fiduciary duty).

## MISAPPROPRIATION OF TRADE SECRETS

In Issue One, Appellant argues that the trial court erred by granting Appellees' no-evidence motions for summary judgment on its misappropriation-of-trade-secrets claim because the evidence was sufficient to demonstrate each element of the claim. The elements of a misappropriation-of-trade-secrets claim are: (1) the existence and ownership of a trade secret; (2) the breach of a confidential relationship or improper discovery of a trade secret; (3) use or disclosure of the trade secret; and (4) damages to the owner. *Rusty's Weigh Scales & Serv., Inc. v. North Tex. Scales, Inc.,* 314 S.W.3d 105, 109 (Tex. App. – El Paso 2010, no pet.). Appellees challenged the damages element in their no-evidence motion for summary judgment; thus, Appellant had the burden to present more than a scintilla of evidence on damages in response. *See Gray*, 225 S.W.3d at 616. Because we believe the trial court could have properly determined that Appellant presented no evidence to support damages element, we do not address the other elements of Appellant's misappropriation-of-trade-secrets claim. *See* TEX. R. CIV. P. 166a(i); *Carr*, 776 S.W.2d at 569; *Prize Energy Resources, L.P.*, 345 S.W.3d at 556.

Appellant specifically claimed damages in the form of lost profits. A party can recover lost profits only if they are proven with reasonable certainty based upon objective facts, figures, or

6

data from which the amount can be ascertained. *See Rusty's Weigh Scales & Serv., Inc.*, 314 S.W.3d at 110. Recovery of damages for lost profits does not mean that the loss must be susceptible of exact calculation, nor is the injured party required to produce in court the documents that support the lost profit opinions or estimates. *Id*. While the determination of what constitutes reasonably-certain evidence of lost profits is fact intensive, a bare assertion that contracts were lost does not demonstrate a reasonably certain objective determination of lost profits. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84-85 (Tex. 1992). The record must show how the lost profits were calculated. *Id*. at 84.

### *Appellee Olga L. Rodriguez' No-Evidence Motion for Summary Judgment*

In response to Olga L. Rodriguez' no-evidence summary judgment challenge to the damages element, Appellant relied on its own response to a supplemental request for disclosure as evidence of damages. Specifically, Appellant pointed to its supplemental response which sets out the amount and calculation method of its damages. Appellant's supplemental response stated:

> In calculating the amount of lost profits, Plaintiff seeks the value of lost revenue proximately caused by Defendants in the amount of $1,085,925. This amount is based upon the business infringement on Plaintiff caused by Defendants' action and loss of patient revenue. In calculating the amount of disgorgement, Plaintiff will aggregate the wages, monies, income, and other compensation and benefits received by Defendants relating all transaction conducted from the inception of any business engaged in competition with Plaintiff's business. The amount received by Defendant to be disgorged to Plaintiff is believed to be approximately $500,000.

On appeal, Appellant cites to the evidence presented in response to the other Appellees' motion for summary judgment, and not to any evidence it produced in response to Rodriguez' motion for summary judgment. However, on appeal, we may look only to proper summary judgment evidence. *See* TEX. R. CIV. P. 166a(c), (d). The evidence raised by Appellant in response to another party's motion for summary judgment is not proper evidence to be considered

7

when reviewing a separate and independent motion for summary judgment. *See Saenz v. S. Union Gas Co.*, 999 S.W.2d 490, 494 (Tex. App. – El Paso 1999, pet. denied) (holding that Rule 166a(i) requires the court to look only at the evidence produced in the nonmovant's response to the present motion).

In its reply brief, Appellant argues that its summary judgment evidence raises a fact issue on the element of damages. Appellant relies on *Enterprise Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004), to assert that the trial court could properly consider all the evidence attached in the responses to both summary judgment motions because all of Appellant's summary judgment evidence was on file at least seven days before the summary judgment hearing. However, *Enterprise Leasing* does not support Appellant's argument. *Enterprise Leasing* emphasizes that the burden is on the party challenging a grant of summary judgment to include a complete record for appellate review, and in that case, the trial court was presented with a single party's motion for partial summary judgment. *Id.* at 548-50.

Our review of all the evidence presented by Rodriguez' motion and Appellant's response to that motion, in the light most favorable to Appellant, leads us to conclude that the evidence is not sufficient to raise a fact issue on damages. In fact, Appellant's response provides a numerical value of the lost revenue sought by Appellant, and sets out the basis for that to be Appellees' alleged business infringement and loss of patient revenue. Appellant also gives the amount it seeks to disgorge from Appellees and sets out the method it will employ in calculating the disgorgement amount. However, there is no discussion of how the amounts cited were arrived at, nor any calculations or information on what they were based. The response is void of any methodology employed in arriving at either the lost revenue or the disgorgement amount. Lost

profits must be non-speculative and corroborated. *Rusty's Weigh Scales & Serv., Inc.*, 314 S.W.3d at 111. Moreover, the affidavit testimony of Melissa Avila, the person who oversees Appellant's clinical operations, attached as evidence to Appellant's response to Rodriguez, does not address damages, lost profits, or loss of patient revenue whatsoever. Accordingly, we conclude the trial court did not err by granting Rodriguez' no-evidence motion for summary judgment on Appellant's misappropriation of trade secrets claim because Appellant failed to present any evidence of damages. *See id.* at 110-11 (affirming trial court's determination that appellant was not entitled to lost profits because claim for $2 million in lost profits was not supported with any objective figures or data); TEX. R. CIV. P. 166a(i); *Carr*, 776 S.W.2d at 569; *Prize Energy Resources, L.P.*, 345 S.W.3d at 556. Issue One is overruled as to Appellee Olga L. Rodriguez.

### The Other No-Evidence Motion for Summary Judgment

Appellant argues that its response presented sufficient evidence of damages for the misappropriation-of-trade-secrets claim because it set out evidence of lost patient contracts and lost profits. Specifically, Appellant presented the affidavit testimony of Melissa Avila,[3] the Vice President of Clinical Operations for Medica Health Management.[4] Avila states that she is privy to and aware of the profits earned by Appellant. Avila further states that she reviewed the charts of patients that were discharged by Appellees, that she is aware that Appellant lost thirty patients due to Appellees' actions, and as a result, that Appellant's lost profits totaled $260,576.

Appellant also provided deposition testimony excerpts from Robert McLemore,

---

[3] This affidavit differed from the one Appellant attached in response to Olga L. Rodriguez' summary judgment motion.
[4] According to Avila's affidavit, Medica Health Management has a contractual relationship with Appellant through which Avila oversees Appellant's clinical operations and assists with matters involving patient care.

Appellant's Director of Nursing at the time of Appellee's resignation in 2009, and Shirley Perkins, who acted as Appellant's Director of Services during the same time period. McLemore testified that there was a "rash of discharges" when Appellees resigned which reduced the patient census. McLemore estimated that Appellant's patient census dropped by thirty patients. Similarly, Perkins testified that Appellant's patient count dropped after February 2009.

On appeal, Appellees maintain that Avila's affidavit provides only a bare assertion that Appellant lost profits and as such argue that Appellant failed to present any evidence of damages. Relying on *Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251 (Tex. App. – Corpus Christi 1987, writ ref'd n.r.e.), *Pena v. Ludwig*, 766 S.W.2d 298 (Tex. App. – Waco 1989, no writ), and *Smith v. Royal Seating, Ltd.*, 2009 WL 3682644 (Tex. App. – Austin 2009, no pet.) (memo op.), Appellant contends that the evidence offered by Avila's affidavit is sufficient to justify an award of lost profits. We disagree. Appellant relies on several cases that are distinguishable from the facts before us.

In *Frank B. Hall & Co. v. Beach, Inc.*, 733 S.W.2d 251 (Tex. App. – Corpus Christi 1987, writ ref'd n.r.e.), the appellate court implicitly determined that there was sufficient evidence to support a jury's award of $240,000 in lost profits because, in addition to presenting the testimony of an accountant who examined the company's invoices and calculated that the claimant lost $377,414 in gross revenue, the claimant also provided the testimony of its president who quantified both the percentage of costs and profits associated with that sum. *Id*. at 258. In *Pena v. Ludwig*, 766 S.W.2d 298 (Tex. App. – Waco 1989, no writ), a business owner's testimony on lost profits was held to have probative value even though it was not supplemented by underlying business records because the owner testified from actual, firsthand knowledge of financial data

10

and outlined a reasonable methodology. *Id.* at 304. In *Smith v. Royal Seating, Ltd.*, 2009 WL 3682644 (Tex. App. – Austin 2009, no pet.) (memo op.) in considering a challenge to the sufficiency of the evidence of a tortious-interference claim, the appellate court concluded that there was sufficient evidence to support that appellant's actions caused actual damages to the appellee. *Id.*, at *9. In that case, the evidence established that the underlying transaction was completed as contemplated with the exception that the appellee was substituted as a distributor, and the vice-president testified that due to that substitution his company lost the sale of 8,700 chairs, and that the profit would have been $9 per chair for a total of $78,300. *Id.*

Unlike the cases relied upon by Appellant, Avila's affidavit testimony did not state that she had firsthand knowledge of Appellant's financial data. Furthermore, her calculation of lost profits was not based on a review of invoices, but on a review of patient charts. Her affidavit testimony did not quantify the percentage of costs and profit and did not explain or provide any outline of the methodology used to calculate Appellant's lost profits. Additionally, there was no testimony from Avila indicating that the thirty patients who were alleged to have been lost due to Appellees' actions would have remained with Appellant. The evidence showed that the patients were not under any contract with Appellant and were free to choose which agency to use for their care. Avila's testimony also did not show how much profit Appellant would have made on each individual patient.

Lost profits must be non-speculative and corroborated. *Rusty's Weigh Scales & Serv., Inc.*, 314 S.W.3d at 111. Here, Avila's affidavit testimony merely states that she was aware that Appellant lost thirty patients due to Appellees' actions, and as a result, lost profits in the amount of $260,576. However, Avila failed to testify how she determined the amount of lost profits.

Although Avila states that she was privy to and aware of Appellant's profits and that she reviewed the charts of the patients discharged by Appellees, Avila's testimony failed to show how those charts supported her lost profits calculation. Moreover, Avila's affidavit failed to provide any calculations based on her review of the patient's charts.

Because Appellant failed to present evidence of damages, the trial court properly granted summary judgment in favor of Appellees on Appellant's claim for misappropriation of trade secrets. *See Holt Atherton Indus., Inc.*, 835 S.W.2d at 84-85; *Rusty's Weigh Scales & Serv., Inc.*, 314 S.W.3d at 110-11; TEX. R. CIV. P. 166a(i); *Carr*, 776 S.W.2d at 569; *Prize Energy Resources, L.P.*, 345 S.W.3d at 556. Issue One is overruled as to the other Appellees.

## CONVERSION, BREACH OF CONTRACT, AND BREACH OF FIDUCIARY DUTY

In Issues Two through Four, Appellant contends that the summary judgment in favor of Appellees must be reversed because disputed issues of fact exist as to its claims for conversion, breach of contract, and breach of fiduciary duty.

### *Appellee Olga Rodriguez' No-Evidence Motion for Summary Judgment*

### *Conversion*

In Issue Two, Appellant asserts that its conversion claim is based on Rodriguez' use of its confidential and proprietary business information.[5] Appellant maintains that its summary judgment evidence established that Rodriguez used its confidential property for her own personal benefit in a manner that was inconsistent with Appellant's rights.

Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's

---

[5] In its first amended petition, Appellant alleged that Rodriguez took supplies, client lists, client contact information, supplier lists, and the policies and procedure and employment manuals from Appellant and that she did not return Appellant's property upon resignation.

rights. *Vibbert v. PAR, Inc.*, 224 S.W.3d 317, 321 (Tex. App. – El Paso 2006, no pet.). The elements of a conversion cause of action are: (1) the plaintiff, owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property. *Id.*

In her no-evidence motion for summary judgment, Rodriguez asserted that Appellant's claim for conversion failed despite Appellant's allegation that she exercised dominion and control over its property, because Appellant failed to offer any evidence that Rodriguez had converted a single item of Appellant's property. In response to Rodriguez' motion, Appellant argued that it had produced sufficient evidence to support its conversion claim based on its misappropriation-of-trade-secrets argument and because, during discovery, Rodriguez produced documents evidencing her misappropriation of Appellant's confidential and proprietary information, including trade secrets, Appellant argued that, during discovery, Rodriguez produced documents containing the notation "CC 12/02" in the lower left corner. Appellant then directed the trial court to Melissa Avila's affidavit. Avila's affidavit explained that the notation "CC 12/02" was used by Appellant to identify its company documents.[6] However, Avila's affidavit does not state that Rodriguez converted any property belonging to Appellant. In its misappropriation argument, Appellant asserted that Rodriguez gathered Appellant's patient

---

[6] Here, Appellant again cites to the evidence it presented in response to the other Appellees' summary judgment motion and not to the evidence it produced in response to Rodriguez' summary judgment motion. Because we may only look to proper summary judgment evidence, we do not consider the evidence raised by Appellant in response to the other parties' motion for summary judgment when reviewing Rodriguez' separate and independent summary judgment motion. *See* TEX. R. CIV. P. 166a(c),(d). *Saenz*, 999 S.W.2d at 494.

13

information and used it to move patients to Ayuda Health for her own personal financial gain.   In support of this contention, Appellant noted that in her deposition testimony, Rodriguez agreed that she had access to confidential patient files while employed with Appellant, that she discharged several patients prior to her resignation, that those patients thereafter became patients of Ayuda Home Health, and that Rodriguez already knew she was going to resign before she discharged some of the identified patients.

Appellant contends that the foregoing evidence relating to Rodriguez' use of confidential trade secrets is also evidence that creates a fact issue on its conversion claim.   In support of its argument, Appellant also refers us to the "Acknowledgment of Employee Manual" form signed by Rodriguez, which states in part that she acknowledges that confidential information will be made available to her during her employment with Appellant and that such information is not to be used or exploited with any other individual or company in the event of voluntary or involuntary termination.   According to Avila, on February 5, 2009, the day Rodriguez resigned from her employment with Appellant, Avila became aware that Appellee had contacted a doctor to request a transfer order to switch the home health care services of one of Appellant's patients to Ayuda Home Health, a company in which Rodriguez was part owner.

The taking of a party's confidential client list and trade secrets can be the basis for a conversion claim.   *See Chandler v. Mastercraft Dental Corp.*, 739 S.W.2d 460, 469 (Tex. App. – Fort Worth 1987, writ denied).   Where the property at issue in a conversion claim, is essentially information, and not a tangible item, the plaintiff has to show that the defendant intended to deprive the plaintiff of the information, or that the defendant intended to use the information in a manner that excluded or was inconsistent with the plaintiff's rights.   *See Westlake Surgical, L.P.*

14

*v. Turner*, No. 03-08-00122-CV, 2009 WL 2410276, at \*3 (Tex. App. – Austin Aug. 7, 2009, no pet.) (memo op.).

Based on the summary judgment record before us, the trial court could have determined that Appellant failed to produce any evidence that Rodriguez assumed or exercised dominion and control over Appellant's property in an unlawful or unauthorized manner, to the exclusion of and inconsistent with Appellant's rights. Here, there is no evidence suggesting that Rodriguez took any of Appellant's confidential business information, that she intended to deprive Appellant of the information, or that she used or intended to use that information in a manner that was inconsistent with Appellant's rights.

However, the evidence showed that Rodriguez' nursing responsibilities included participating in the patient discharge planning process, coordinating services for the patient, informing the physician of changes in the client's needs, and using appropriate communication strategies to affect positive client-care outcomes. The evidence also showed that, upon admission, Appellant's clients received information on their rights as patients, which included the right to request services from a home health care agency of their choice, full information from their agency about services provided, and the alternatives available to them.[7] While there is evidence that Rodriguez requested a transfer order to switch a patient from Appellant's care to Ayuda Home Health's care, Avila's affidavit does not state that Rodriguez wrongfully requested the transfer or that she was without authorization to do so. The evidence also showed that Rodriguez resigned

---

[7] In her summary judgment affidavit, Rodriguez stated that within a reasonable time before leaving her employment with Appellant, she informed her patients that they would be provided with a new nurse due to her change in employment, and that in response to specific patient requests who stated a desire to continue receiving their care from Rodriguez, she informed them of the alternatives available to them, including the ability to request services from the home health care agency of their choice.

15

from her employment with Appellant because her visits with patients were being reduced and because Appellant informed her that if she did not become a salaried employee, her patient visits would be taken away. While some evidence shows that Rodriguez discharged patients to Ayuda Home Health, Rodriguez discharged at least one patient because Appellant did not provide physical therapy services, discharged another patient because Appellant no longer accepted her insurance, and discharged five patients[8] after they indicated that wanted to follow Rodriguez to the other agency. Appellant did not negate this evidence, nor did it present any evidence that Rodriguez assumed or exercised dominion and control over Appellant's property in an unlawful or unauthorized manner, to the exclusion of and inconsistent with Appellant's rights. Even when viewed in the light most favorable to Appellant, the evidence does no more than support a mere suspicion or surmise that Rodriguez used Appellant's confidential property for her own personal benefit, in a manner that was inconsistent with Appellant's rights. Accordingly, the evidence does not rise to a scintilla of evidence. *King Ranch, Inc.*, 118 S.W.3d at 751. Because there is no evidence of at least one element of the claim of conversion, we conclude the trial court properly granted summary judgment in Rodriguez' favor on Appellant's claim for conversion. *Carr*, 776 S.W.2d at 569; *Prize Energy Resources, L.P.*, 345 S.W.3d at 556. Issue Two is overruled as to Appellee Olga Rodriguez.

### Breach of Contract

In Issue Three, Appellant contends that disputed issues of fact require reversal of the summary judgment on its breach-of-contract claim. To recover for breach of contract, a party must prove the existence of a valid contract, performance or tendered performance by the plaintiff,

---

[8] At least two of the five patients were patients that followed Appellee from agencies she had previously worked with and wanted to continue their care with Appellee.

breach of contract by the defendant, and damages resulting because of defendant's breach. *See*

*Godfrey v. Sec. Serv. Fed. Credit Union*, 356 S.W.3d 720, 726 (Tex. App. – El Paso 2011, no pet.).

According to Appellant's brief, the basis for its breach of contract claim is based on Rodriguez'

breach of its non-competition and confidentiality agreement.

*Did the parties enter into a confidentiality and non-compete agreement?*

Rodriguez' no-evidence motion for summary judgment alleged that Appellant had failed to

produce any evidence that she entered into a covenant not to compete with Appellant. In her

summary judgment affidavit, Rodriguez states that she did not execute a confidentiality and

non-compete agreement in 2004, and that, at that time, Appellant was aware that Rodriguez was

employed by its competitors. Appellant contradicted Rodriguez' affidavit with Avila's affidavit

in which Avila explains that she facilitated the hiring process and orientation of Rodriguez in

August 2004. During the orientation process, Avila provided Rodriguez with a confidentiality

and non-compete agreement. At that time, Rodriguez did not refuse to sign the agreement.

Avila witnessed Rodriguez sign and execute the agreement, and then placed it in Rodriguez'

personnel file. According to Avila, subsequent audits of Rodriguez' file showed that Rodriguez

had signed a confidentiality and non-competition agreement. Avila explained that the agreement

went missing only after Appellee Jesus R. Rodriguez was entrusted with maintenance of the

personnel files in 2008. Appellant also presented a copy of a "Confidentiality and

Non-Competitive Agreement" which contains the initials of Appellant's unidentified

representative, the word "refuse" written on the employee signature line, and a handwritten date

that appears to be October 10, 2004. During her deposition testimony, Rodriguez was questioned

about that agreement. Rodriguez testified she had written on the agreement that she refused to

17

sign the confidentiality and non-compete agreement. Rodriguez could not identify the initials of the corporate representative who witnessed the agreement, and could not tell if the date written on the agreement was her writing. This inconsistent and conflicting evidence in the summary judgment record creates a fact issue regarding the existence of a written and signed confidentiality and non-compete agreement between the parties. *See Rankin*, 319 S.W.3d at 67. Because evidence of the existence of a valid contract is essential to recover for breach of contract, we conclude the trial court could not have properly granted Appellant's no-evidence motion for summary judgment on Appellant's claim for breach of contract because there is inconsistent and conflicting evidence as to whether the parties executed a valid, written confidentiality and non-compete agreement. *See Godfrey*, 356 S.W.3d at 726; *Rankin*, 319 S.W.3d at 67.

*Rodriguez' Traditional Motion for Summary Judgment*

Rodriguez also moved for a traditional motion for summary judgment on Appellant's breach of contract claim, and asserted that the statute of frauds barred the claim because Appellant was suing on an agreement that could not be performed in less than one year. On appeal, Appellant contends that Rodriguez did not conclusively establish that the statute of frauds applied to the non-compete agreement. Additionally, Appellant argues that the statute of frauds does not apply to the non-compete agreement and therefore, the trial court erred in granting summary judgment on that basis.

Whether an agreement falls within the statute of frauds is a question of law. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 149 (Tex. App. – Houston [1st Dist.] 2005, pet. denied). The statute of frauds includes agreements that are not to be performed within one year of their making unless they are in writing and signed by the person to be charged with the promise. *See* TEX. BUS.

18

& COM. CODE ANN. § 26.01(a), (b)(6) (West 2009); *Niday v. Niday*, 643 S.W.2d 919, 920 (Tex. 1982). For example, if an employment contract is capable of being performed within one year, it is not within the statute of frauds. *See Gerstacker v. Blum Consulting Eng., Inc.*, 884 S.W.2d 845, 849 (Tex. App. – Dallas 1994, pet. denied). Moreover, "[a] contract that could *possibly* be performed within a year, however improbable performance within one year may be, does not fall within the statute of frauds. *Beverick*, 186 S.W.3d at 149 (emphasis in original) (citing *Hall v. Hall*, 158 Tex. 95, 308 S.W.2d 12, 15 (1957)); *see Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 776 (Tex. 1974) (contract to pay employee bonus after one year could theoretically be performed before year expired); *Young v. Fontenot*, 888 S.W.2d 238, 241 (Tex. App. – El Paso 1994, writ denied) (agreement to transfer stocks at unidentified date in future was performable within one year and therefore did not fall within statute of frauds).

Rodriguez bore the burden of conclusively establishing all the elements of her affirmative defense as a matter of law such that there is no genuine issue of fact. *See* TEX. R. CIV. P. 166a(c); *Moritz v. Bueche*, 980 S.W.2d 849, 856 (Tex. App. – San Antonio 1998, no pet.). On appeal, Appellant maintains that the statute of frauds does not apply to the agreement at issue here since performance was possible within one year and because Rodriguez could have signed the agreement and resigned on the same day of the signing.

The non-compete agreement specifies that the agreement applies during the course of the employee's employment with Appellant and during the twelve-month period thereafter. The agreement does not state that it is not to be performed within a year after its execution. Additionally, we agree with Appellant that the agreement conceivably could have been accomplished within one year and therefore, the agreement does not fall within the statute of

frauds. *See Miller*, 517 S.W.2d at 776; *Beverick*, 186 S.W.3d at 149. Accordingly, Rodriguez has failed to establish her affirmative defense under the statute of frauds.

As Rodriguez has failed to conclusively establish her affirmative defense and because a genuine issue of material fact issue exists regarding whether the parties entered into a valid, written non-compete agreement, we conclude summary judgment on Appellant's breach of contract claim was not warranted. *See Frost Nat. Bank*, 315 S.W.3d at 509; *Smith*, 288 S.W.3d at 424. Issue Three is sustained as to Appellee Olga L. Rodriguez.

### *Breach of Fiduciary Duty*

In Issue Four, Appellant asserts that the trial court could not have properly granted summary judgment on its breach-of-fiduciary-duty claim based on the evidence that Appellant presented. In its reply brief, Appellant argues that evidence that Rodriguez used Appellant's trade secrets is grounds for a claim for breach of fiduciary duty. Appellant refers us to Avila's testimony establishing that, while still employed with Appellant, Rodriguez requested that a doctor transfer a patient's care from Appellant to Ayuda Health as evidence that Rodriguez breached her fiduciary duty by soliciting Appellant's clients.

Under an agent-principal theory, Texas courts have held that certain employees have a fiduciary duty to their employers. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 203 (Tex. 2002) (holding law firm associate owes fiduciary duty to employer); *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510-11 (Tex. App. – Houston [1st Dist.] 2003, no pet.) (holding key trucking company employee owed his employer a fiduciary duty); *Herider Farms-El Paso, Inc. v. Criswell*, 519 S.W.2d 473, 477 (Tex. Civ. App. – El Paso 1975, writ ref'd n.r.e.) (holding that a retail poultry and egg outlet manager held a position which gave rise to fiduciary duties). To

prevail on a breach-of-fiduciary-duty claim, a party must prove the existence of a fiduciary duty, breach of the duty, causation, and damages. *Las Colinas Obstetrics-Gynecology-Infertility Ass'n v. Villalba*, 324 S.W.3d 634, 645 (Tex. App. – Dallas 2010, no pet.) (citing *Abetter Trucking*, 113 S.W.3d at 508). An employee may prepare to go into competition with his employer, and can actively take steps to do so while still employed. The employee does not have a general duty to disclose his plans and can secretly join with other employees to compete without violating any duty to his employer. *Abetter Trucking*, 113 S.W.3d at 511. However, an employee cannot misappropriate the trade secrets of his employer, solicit his employer's customers while still employed, or take away information such as customer lists. *See Johnson*, 73 S.W.3d at 202; *see also Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 316 (Tex. App. – Fort Worth 2003, no pet.) ("[e]ven apart from any written contract, a fiduciary relationship arises from an employment relationship forbidding an employee from using trade secrets or confidential or proprietary information in a manner adverse to the employer. The obligation survives termination of the employment relationship.").

In her no-evidence summary judgment motion, Rodriguez alleged that there was no evidence that she had breached any fiduciary duty owed to Appellant. In response, Appellant asserted that it had provided Rodriguez with its valuable, patient information for the purpose of acting as its agent in providing nursing care to its patients and that Rodriguez had breached her fiduciary duty to Appellant by engaging in a course of unfair competition, which included the misappropriation of Appellant's trade secrets and violation of the confidentiality and non-compete agreement.

We disagree with Rodriguez' argument that Appellant produced no evidence of a breach of

21

fiduciary duty. Here, the record establishes that Rodriguez had access to confidential patient files while employed with Appellant, that she discharged several patients prior to her resignation, that several of those patients were discharged to Ayuda Health Care shortly before or after Rodriguez' resignation, that Rodriguez already knew she was going to resign before she discharged some of the identified patients, that Rodriguez requested a transfer order switching a patient's care from Appellant to Ayuda Health Care, and that Rodriguez was part owner of Ayuda Home Health Care. Therefore, when we view the evidence in the light most favorable to Appellant and indulging all inferences in Appellant's favor, we conclude Appellant presented more than a scintilla of probative evidence that raises a genuine issue of material fact on the issue of whether Rodriguez breached a fiduciary duty owed to Appellant. *See* TEX. R. CIV. P. 166a(i); *King Ranch, Inc.*, 118 S.W.3d at 750-51; *Gray*, 225 S.W.3d at 616. Therefore, the trial court erred in granting Rodriguez' no-evidence summary judgment on Appellant's claim for breach of fiduciary duty. *See Smith*, 288 S.W.3d at 424.

*Rodriguez' Traditional Motion for Summary Judgment*

In her traditional motion for summary judgment on Appellant's breach-of-fiduciary-duty claim, Rodriguez asserted that her implementation of Appellant's "Client Bill of Rights" could not constitute a breach of fiduciary duty. On appeal, Rodriguez maintains that she showed that she was entitled to traditional summary judgment on that claim because the actions Appellant complained of were mandated by Appellant's "Client Bill of Rights." Rodriguez cites no authority or case law to support her argument. Nonetheless, we conclude the argument is meritless because a breach of fiduciary duty can be based on an employee's use of an employer's confidential or proprietary information in a manner adverse to the employer. *See Johnson*, 73

22

S.W.3d at 202; *see also Mabrey*, 124 S.W.3d at 316. Therefore, we conclude the trial court erred in granting Rodriguez' traditional motion for summary judgment on Appellant's claim for breach of fiduciary duty. Issue Four is sustained as to Appellee Olga L. Rodriguez.

### *The Other Appellees' Motion for Summary Judgment*

In their no-evidence motion for summary judgment as to the claims of breach of contract, breach of fiduciary duty, and conversion, the other Appellees asserted that they were entitled to summary judgment on all of Appellant's claims because Appellant failed to present any evidence of damages. On appeal, Appellees maintain that summary judgment as to all of Appellant's claims was proper because Appellant presented no evidence of lost profits.

Damages are an essential element of a party's claims for breach of contract, breach of fiduciary duty, and conversion. *See Godfrey*, 356 S.W.3d at 726 (listing elements of breach of contract); *Las Colinas*, 324 S.W.3d at 645 (listing elements of breach of fiduciary duty which includes damages); *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 706 (Tex. App. – Dallas 2012, no pet.) (proof of damages must exist before a party can recover for conversion); *see also Lopez v. Lopez*, 271 S.W.3d 780, 784 (Tex. App. – Waco 2008, no pet.) (listing elements of conversion which includes injury to plaintiff).

As was discussed in Issue One, Appellant offered no evidence that it sustained damages, and thus, the trial court properly rendered summary judgment in favor of Appellees on Appellant's claims for breach of contract, breach of fiduciary duty, and conversion. *See* TEX. R. CIV. P. 166a(i); *Carr*, 776 S.W.2d at 569; *Prize Energy Resources, L.P.*, 345 S.W.3d at 556. Issues Two, Three, and Four are overruled as to the other Appellees.

## CONCLUSION

We affirm the trial court's judgment in its entirety as to Appellees, Ayuda Home Health, Edwing A. Martinez, Lizette Martinez, and Jesus R. Rodriguez. We affirm the trial court's judgment granting summary judgment in favor of Appellee Olga L. Rodriguez on Appellant's claims for misappropriation of trade secrets and conversion. We reverse the trial court's judgment granting summary judgment as to Appellee Olga L. Rodriguez on Appellant's claims for breach of contract and breach of fiduciary duty. This case is remanded for further proceedings.

GUADALUPE RIVERA, Justice

May 22, 2013

Before McClure, C.J., Rivera, and Rodriguez, JJ.

24