**MERRITT HAWKINS & ASSOCIATES, LLC, MHA**

v.

**Larry Scott GRESHAM, Billy Bowden, and Consilium Staffing, LLC, Defendants.**

No. 3:13–CV–00312–P.

United States District Court,
N.D. Texas,
Dallas Division.

Signed Jan. 13, 2015.

Amber T. Welock, Welock, P.C., Brian A. Colao, Christine A. Nowak, James Matthew Sikes, Jason M. Ross, Kevin Alan Teters, Zachary Quentin Hoard, Dykema Gossett PLLC, Dallas, TX, for Merritt Hawkins & Associates, LLC, MHA.

Jeffrey M. Tillotson, John D. Volney, Katherine Helen Bennett, Michelle Youn Ku, Lynn Tillotson Pinker & Cox LLP, Dallas, TX, for Defendants.

### ORDER

JORGE A. SOLIS, District Judge.

Now before the Court is Plaintiff's Motion for Partial Summary Judgment, filed June 20, 2014. Doc. 61. Defendants filed a response on August 1, 2014. Doc. 77. That same day, Defendants also filed an objection and motion to strike Plaintiff's summary judgment evidence. Doc. 81. Plaintiff filed its reply, which also addressed Defendants' motion to strike, on August 15, 2014. Doc. 82. Defendants

filed a reply to their motion to strike on August 29, 2014. Doc. 88.

On October 20, 2014, Defendants filed a Motion for Summary Judgment of their own. Doc. 92. Plaintiff responded on November 10, 2014. Doc. 103. On November 24, 2014, Defendants filed their reply. Doc. 107.

Also before the Court is Defendants' Motion to Exclude Opinion Testimony of Mark Smith, filed October 20, 2014. Doc. 97. Plaintiff filed its response on November 10, 2014. Doc. 99. Defendants replied on November 24, 2014. Doc. 105. Because Defendants' other motions rely on the disposition of Mark Smith's testimony, the Court addresses Defendants' motion to exclude along with the motions for summary judgment.

After reviewing the briefing, the evidence, and the applicable law, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment, GRANTS in part and DENIES in part Defendants' Motion for Summary judgment, DENIES Defendants' Motion to Strike, and DENIES Defendants' Motion to Exclude Opinion Testimony of Mark Smith.

## I. Background

This case is about two employees who left a company to work for a competitor. Defendants Larry Gresham ("Gresham") and Billy Bowden ("Bowden") are both former employees of Plaintiff Merritt Hawkins & Associates, LLC ("MHA"). Doc. 58 at 10. As employees of MHA, both Bowden and Gresham signed agreements containing non-competition, non-disclosure, and non-interference provisions. Doc. 58 at 5–8. On September 7, 2010, Bowden ended his employment with MHA. Doc 58 at 10. During the fall of 2012, MHA claims that Bowden, in direct violation of a non-interference provision still valid within his employment contract with MHA, recruited Gresham to come work with Bowden for Defendant Consilium Staffing, LLC ("Consilium"), a direct competitor of MHA. Doc. 58 at 11. Gresham apparently decided to join Bowden, and, as he left MHA's employment, MHA claims that Gresham accessed MHA's offices using his security badge and utilized his employee password to download over four-hundred files from MHA's computer network. Doc. 58 at 14. Defendants deny these allegations. Doc. 66; 67.

Based on these facts, MHA's amended complaint alleges that Gresham is liable for: violating the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; harmful access by computer under Texas Civil Practice & Remedies Code § 143.001 et seq.; conversion; violating the Texas Theft Liability Act; and theft, misappropriation, and inevitable disclosure of trade secrets. Doc. 58 at 17–24. MHA's amended complaint also alleges that both Gresham and Bowden are liable for breach of contract and breach of fiduciary duty. Doc. 20–22. Finally, the complaint alleges that Bowden and Consilium are liable for tortious interference with an existing contract, and aiding and abetting such interference. Doc. 58 at 24. Defendants filed their amended answers to the complaint, generally denied all relevant allegations. Doc. 66; 67.

Now, MHA seeks partial summary judgment on its breach of contract claims against Gresham and Bowden as well as its tortious interference claim against Bowden. Doc. 62. Defendants oppose MHA's motion and seek summary judgment against each of MHA's claims. Doc. 93. Defendants also seek to exclude the testimony of Mark Smith. Doc. 97.

## II. Legal Standard & Analysis

### a. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, courts "grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party bears the burden of proof at trial, the party seeking summary judgment can meet its obligation by pointing the Court to the absence of admissible evidence to support the claim. *Id.* at 325, 106 S.Ct. 2548. Once the movant does so, the nonmoving party must go beyond her pleadings to designate specific facts showing there is a genuine issue for trial. *See id.* at 324, 106 S.Ct. 2548; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). However, all evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. Fed. R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts demonstrating a genuine issue of material fact such that a reasonable jury might return a verdict in his favor. *Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. 2505. Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *See id.* at 249–50, 106 S.Ct. 2505. In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (en banc); *see also Abbott v. Equity Grp., Inc.,* 2 F.3d 613, 619 (5th Cir.1993) ("[U]nsubstantiated assertions are not competent summary judgment evidence.") (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548). Furthermore, a court has no duty to search the record for evidence of genuine issues. Fed.R.Civ.P. 56(c)(1) & (3); *see Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). It is the role of the fact finder, however, to weigh conflicting evidence and make credibility determinations. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505.

### i. Evidence of Damages

As a preliminary matter, Defendants argue that MHA cannot meet its summary judgment burden on its claims because MHA relies exclusively on testimony from its president Mark Smith to prove damages, and Smith's testimony is inadmissible. Doc. 93 at 29. MHA does not dispute that its claims require proof of damages or that Smith's testimony is the only evidence of damages. Doc. 103 at 35–36. Instead, MHA argues that Smith's testimony is admissible and adequately evidences damages to survive summary judgment. *Id.* Because the majority of the issues in this case hinge on the admissibility of Smith's testimony, the Court takes a detour from examining summary

judgment to address the admissibility issue first.

### 1. Admissibility of Smith's Testimony

Defendants move to strike and exclude Smith's testimony. Doc. 81; 97. Defendants argue that Smith does not qualify as an expert witness under Rule 702 of the Federal Rules of Evidence, and Smith cannot offer lay opinions because he has no personal knowledge of the facts and his testimony is unreliable. Doc. 105. On the other hand, MHA contends that Smith has been properly designated as a lay witness and that his testimony satisfies Rule 701. Doc. 99 at 7–7.

First, Defendants argue that Smith's opinions are expert opinions, subject to Rule 702, because MHA designated Smith as an expert witness. Doc. 105 at 2 (citing MHA's expert witness designation, Doc. 100 at 27). Defendants are correct that MHA originally sought to qualify Smith as an expert. Doc. 100 at 27 (MHA's expert designation, asserting, "Smith is qualified as an expert"). *But see* Doc. 99 at 7 n. 1 (MHA's brief, claiming, "Plaintiff has never represented that Smith was being designated to testify as a retained expert under Rule 702."). However, MHA's designation also offered Smith as a fact witness. *See* Doc. 100 at 27. Because MHA now seeks to treat Smith exclusively as a lay witness, the Court will not bar MHA from so limiting Smith's testimony. Therefore, the Court treats Smith as a lay witness and examines his opinions under Rule 701.

■ Defendants also argue that Smith's testimony fails to satisfy Rule 701. Under Rule 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understand the witness's testimony or to determine a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Ev. 701. The Fifth Circuit has recognized that a witness's "position as company president permits [ ] a broader range of testimony than a traditional lay witness would possess when testifying to matters concerning [the witness's] business." *Versai Mgmt. Corp. v. Clarendon Am., Ins. Co.,* 597 F.3d 729, 736 (5th Cir.2010). "Accordingly, rule 701 does not preclude testimony by business owners or officers on matters that relate to their business affairs. Indeed, an officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert." *Texas A & M Research Found. v. Magna Transp. Inc.,* 338 F.3d 394, 403 (5th Cir.2003).

### a. Mark Smith's Personal Knowledge

■ Defendants claim Smith's testimony is not rationally based on his perception because Smith has no personal knowledge of the data underlying his damages opinions or of the calculations. Doc. 105 at 3. Defendants specifically refer to multiple instances in Smith's deposition where he admitted to not knowing what information was used to create the reports from which Smith or others calculated the alleged damages. Doc. 105 at 3–6. Defendants argue that Smith's inability to explain the substance of the damage calculations indicates that he lacks personal knowledge and is merely repeating the conclusions of his lawyers and finance teams. Doc. 105 at 10–11. Therefore, Defendants believe Smith's testimony does not pass Rule 701 because it was not based on his own independent knowledge or observations.

The Court finds the Fifth Circuit's opinion *DIJO, Inc. v. Hilton Hotels Corp.,* 351 F.3d 679 (2003) particularly instructive. There, the Fifth Circuit held that a financial consultant could not testify as Rule 701 witness on damages, even though he

dealt with the injured company and performed his own appraisal of the damages, because he based his appraisal entirely on information he received from the injured company and had "little significant actual knowledge about [the company] and its operations." *Id.* at 685–86. In reaching this conclusion, the Fifth Circuit noted that "a lay witness who was never employed by or directly involved in a business is unlikely to have the type of first-hand knowledge necessary to provide reliable forecasts of future lost profits." *Id.* at 686. The Fifth Circuit also distinguished similar cases on grounds that those admitted witnesses "were situated in positions comparable to in-house employees." *Id.* Finally, the Court went on to allow a principle of the injured company to testify on the same subject matter as the financial consultant because the principal's "estimates were based on his own involvement in developing the Project." *Id.* at 687.

Here, Smith is the president of MHA. Doc. 100 at 34. While his deposition suggests that he may lack information about the damage calculations offered, Smith is indisputably involved in MHA's management. Not only is Smith not removed from MHA's day-to-day operations, Smith is responsible for "really everything that occurs on a daily basis at Merritt Hawkins." Doc. 100 at 34. The Court recognizes the importance of Smith's involvement to the Rule 701 determination. *Cf. DIJO,* 351 F.3d at 686 ("The further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion testimony will be admissible under Rule 701."). Therefore, while Smith's trustworthiness may be harmed by his inability to adequately explain the damage calculations, the Court is unwilling to conclude at this time that Smith lacks personal knowledge of matters related to his business affairs, such as the alleged damages.

### b. Helpfulness of Smith's Testimony

Next, Defendants dispute whether Smith's opinions will help the jury. MHA believes Smith's opinions will aid the jury by explaining that (1) Bowden and Consilium caused $70,000 in damages by inducing Gresham to violate his employment agreement, (2) Gresham caused between $30,000 and $300,000 in damages by illegally deleting and misappropriating confidential information, and (3) Gresham caused $25,000 in damages by violating his non-competition agreement. Doc. 99 at 13. Defendants argue that Smith's explanations are unhelpful because they are irrelevant and unreliable.

First, Smith reaches the $70,000 figure for tortuous interference with Gresham's employment relationship by determining MHA's cost to train Gresham's replacement to be approximately $45,000 and MHA's lost profits to be $30,684, in addition to the damage to MHA's reputation and goodwill. Doc. 99 at 13.

Defendants begin by arguing that none of MHA's claims allow recovery of the cost to train Gresham's replacement. Doc. 105 at 7. Defendants' argument misses the mark. MHA does not seek recovery of the training cost under a breach of contract theory. MHA seeks this recovery for its tortious interference claim. "The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed." *Am. Nat'l Petroleum Co. v. Transcon. Gas Pipe Line Corp.,* 798 S.W.2d 274, 278 (Tex.1990). While Defendants are correct that the underlying breach of contract claim would likely not allow recovery of the cost to train Gres-

ham's replacement because Gresham was an at will employee, the same is not necessarily true for a tortious interference claim. The Texas Supreme Court has held that,

> [T]he unenforceability of a contract is no defense to an action for tortious interference with its performance. A promise may be a valid and subsisting contract even though it is voidable. Thus third persons are not free to interfere tortiously with performance of the contract before it is avoided. A similar situation exists with regard to contracts terminable at will. Until terminated, the contract is valid and subsisting, and third persons are not free to tortiously interfere with it.

*Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex.1989) (citations omitted). Because even unenforceable contracts are actionable when tortiously interfered with, remedies for such actions must also be available. Therefore, Smith may testify as to any damages resulting from the alleged interference, regardless of Gresham's at-will employment. Additionally, Bowden's employment contract with MHA is irrelevant to MHA's claim for tortuous interference with Gresham's contract. *See* Doc. 104 at 7.

Defendants also criticize Smith's use of projected data, as opposed to real-world data, to calculate the cost to train Gresham's replacement and lost profits. While Smith's inferences may affect his credibility, his opinions are not so unrealistic that they should be inadmissible. The jury will decide the appropriate weight of Smith's testimony.

Next, Defendants challenge Smith's testimony regarding the damages sought between $30,000 and $300,000 for Gresham's deletion and misappropriation of MHA's information. According to MHA, the $30,000 figure represents the expenses in-

curred for investigating and attempting to recover the confidential information, and the $300,000 figure represents the value of the misappropriated information. Doc. 99 at 14. Defendants take issue with the speculative nature of these figures. Doc. 105 at 8–9. However, Defendants are entitled to emphasize this point at trial. The Court is unconvinced that Smith's lack of precision renders his opinions entirely unhelpful to the jury.

■ Finally, Defendants criticize Smith's opinion that MHA lost $25,000 due to Gresham's breach of contract. MHA states that Smith reached this figure based on the lost profits for the years following Gresham's resignation, the cost of training a new employee, and any profits Consilium made as a result of Gresham's employment. Doc. 99 at 15. The Court first notes that Smith is unqualified to testify regarding Consilium's profits. As discussed above, "[t]he further removed a layman is from a company's day-to-day operations, the less likely it is that his opinion testimony will be admissible under Rule 701." *DIJO*, 351 F.3d at 686. Here, Smith is completely uninvolved with Consilium's day-to-day operations. While Smith may have knowledge of Gresham's value or the misappropriated information's value to MHA, Smith has no personal knowledge of the additional profits Consilium gains from them. As to the other issues, Smith may testify based on the previously discussed theories.

In sum, while Smith may not testify regarding Consilium's profits, Rule 701 does not bar the remainder of Smith's testimony at this stage. Therefore, the Court denies Defendants' motion to exclude Smith's testimony. Additionally, because the Court has not relied on Smith's unsworn expert designation, Defendant's motion to strike is also denied. Finally, based on Smith's testimony, MHA has of-

fered sufficient evidence of damages to survive summary judgment on its claims.

### ii. MHA's Computer Fraud and Abuse Act Claim Against Gresham

Next, Defendants seek summary judgment against MHA's CFAA claim. The CFAA prohibits certain intentional or knowing access to computers without authorization. 18 U.S.C. § 1030. Defendants argue that summary judgment is proper here because "Gresham was fully authorized to access all of the information on his MHA work computer when he did so." Doc. 93 at 30. MHA disagrees, arguing that the confidentiality agreement limited Gresham's authority to access his MHA work computer.

Under the CFAA, MHA must show that Gresham accessed a computer "without authorization or exceeding authorized access." 18 U.S.C. § 1030. The statute differentiates between unauthorized users and those who "exceed[ ] authorized access" by defining "exceeding authorized access" as "access[ing] a computer with authorization and ... us[ing] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *See* §§ 1030(a)(1), (a)(2), (a)(3), (e)(6). Defendants believe this authorization requirement only addresses how the accused party obtained access, not how the accused party used or intended to use the information. Doc. 93 at 31. In contrast, MHA argues that the CFAA's authorization requirement covers subsequent unlawful use of the accessed information.

While the statute does not define "authorized," or "authorization," the Fifth Circuit examined the CFAA's authorization requirement in *United States v. John,* 597 F.3d 263 (5th Cir.2010). There, the Fifth Circuit held that authorization "may encompass limits placed on *the use* of information obtained by permitted ac-

cess ... at least when the user knows or reasonably should know that he or she is not authorized to access a computer and information obtainable from that access in furtherance of or to perpetrate a crime." *Id.* at 271. In reaching this conclusion, the Fifth Circuit "agree[d] with the First Circuit that the concept of 'exceeds authorized access' may include exceeding the purposes for which access is 'authorized.'" *Id.* at 272. Further, the Court noted that, "[a]n authorized computer user 'has reason to know' that he or she is not authorized to access data or information in furtherance of a criminally fraudulent scheme." *Id.* at 273. Ultimately, the employee in that case had exceeded her authorization, even where she "was authorized to view and print all of the information that she accessed," because her use of that information "to perpetrate fraud was not an intended use of that system" and was "contrary to [the] employee policies of which she was aware." *Id.* at 272.

■ Based on the Fifth Circuit's explanation, a user exceeds authorization when he accesses information for a purpose that he knows or reasonably should know is not authorized. Therefore, to determine whether Gresham exceeded his authorization, the evidence must show the scope of access that Gresham knew or reasonably should have known was authorized by MHA and the purpose of Gresham's access.

MHA claims that Gresham was not authorized to delete or copy the files that Gresham deleted and copied from his computer on September 23, 2012, one day before he resigned. Doc. 103 at 37–40. To show the scope of authorization, MHA relies on the confidentiality agreement in Gresham's employment contract. *Id.* at 37–38. In the confidentiality agreement, Gresham agreed to not use any of the

"Confidential Business Information, Company Training or Company Relationships for any purpose other than in the course and scope of his/her employment and for the exclusive benefit of the Company," not to "distribute or otherwise disclose" the information, and to keep all of the information confidential. *Id.* at 37 (citing Doc. 104–1 at 59).

■ The summary judgment evidence reveals a fact issue as to whether Gresham exceeded his authorized use of the system. "Courts have ... typically analyzed the scope of a user's authorization to access a protected computer on the basis of the expected norms of intended use or the nature of the relationship established between computer owner and the user." *United States v. John,* 597 F.3d 263, 271 (5th Cir.2010) (quoting *United States v. Phillips,* 477 F.3d 215, 219 (5th Cir.2007)). Additionally, "an employer may 'authorize' employees to utilize computers for any lawful purpose but ... only in furtherance of the employer's business." *Id.* at 271. Here, while the Confidentiality Agreement does not prohibit Gresham from deleting information and MHA's IT personnel admitted that there was "nothing preventing [MHA employees] from deleting files," Doc. 94–1 at 27, Gresham may have exceeded the intended use of his computer if he caused harm to MHA's business by deleting the files. Moreover, a reasonable person may have recognized that he was not authorized to delete the files in the circumstances of this case. Gresham's testimony that he deleted the files with the understanding that all of the documents on his computer were backed up on MHA's server is not sufficient to entitle him to summary judgment in light of the other evidence presented. Doc. 94 at 159. This is not a case of inadvertent or routine file deletion. MHA brings evidence that Gresham deleted hundreds of files on a single day immediately before he terminated his employment. MHA also brings evidence that these files were unrecoverable. The summary judgment evidence shows fact issues as to Gresham's knowledge and intent when he deleted files. Therefore, the Court is unwilling to dismiss MHA's claim as a matter of law.

Likewise, MHA's CFAA claim remains as to the files that Gresham allegedly copied. Because Gresham signed the confidentiality agreement, Gresham was not authorized to use or distribute any of the "Confidential Business Information, Company Training or Company Relationships" for any purpose other than to benefit MHA. Doc. 104–1 at 59. This at least raises a question of fact as to whether Gresham knew or had reason to know that access to MHA's computers for the purpose of obtaining and improperly using such information was unauthorized. MHA also offers evidence of Digital Works's forensic analysis to show that that Gresham copied 447 files. Doc. 104–2 at 38. While MHA fails to offer any evidence that the allegedly copied files contain the information covered by the confidentiality agreement, Gresham admitted to having MHA's client worksheets in his possession. Doc. 104–1 at 50. These documents undeniably qualify as "Confidential Business Information." Doc. 104–1 at 59 (Gresham's employment agreement). Despite the lack of evidence tracking Gresham's acquisition of the worksheets, a likelihood exists that Gresham copied this information by exceeding his authorization to access MHA's computers. Therefore, because Defendants do not contest the remaining requirements, MHA's CFAA claim continues as to the allegedly copied files.

### iii. MHA's Harmful Access By Computer Claim

■ Next, Defendants claim MHA cannot show that Gresham harmed MHA by

accessing MHA's computer system without consent. Texas law allows civil recovery for injuries resulting from harmful computer access in violation of Chapter 33 of the Texas Penal Code, where the "violation was committed knowingly or intentionally." Tex. Civ. Prac. & Rem.Code § 143.001. Under Chapter 33.02(a) of the Texas Penal Code, "[a] person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."

As discussed above, fact issues remain regarding Gresham's intent in allegedly deleting the 276 unrecoverable files from his computer. Accordingly, the Court denies summary judgment on MHA's harmful access claim.

### iv. MHA's Conversion Claim

■ Next, Defendants assert that MHA cannot recover for conversion of intangible property under Texas law. Conversion is the wrongful exercise of dominion and control over property of another, which deprives the owner of its use or is inconsistent with the owner's rights. *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex.1992). Where no physical property is converted, "Texas law has never recognized a cause of action for conversion of intangible property except in cases where an underlying intangible right has been merged into a document and that document has been converted." *Express One Intern., Inc. v. Steinbeck*, 53 S.W.3d 895, 901 (Tex.App.-Dallas 2001, no pet.). However, courts have held that, "[n]otwithstanding the physicality of the property at issue, unauthorized copying of another party's confidential client list and trade secrets can support a claim for conversion in Texas." *In re Simons Broad., LP*, 2013 WL 9542015, at *4 (W.D.Tex.. Nov. 19, 2013); *see also Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home*

*Health Care Servs., LLC*, 404 S.W.3d 737, 749 (Tex.App.-El Paso 2013, no pet) ("The taking of a party's confidential client list and trade secrets can be the basis for a conversion claim."); *Westlake Surgical, L.P. v. Turner*, 2009 WL 2410276, at *3 n. 1 (Tex.App.-Austin 2009, no pet) ("Conversion cases that do not involve funds or tangible assets generally involve trade secrets improperly acquired by a competitor or a competitor's use of a client list in an attempt to poach the suing company's clients."). In such a case, "the plaintiff has to show that the defendant intended to deprive the plaintiff of the information, or that the defendant intended to use the information in a manner that excluded or was inconsistent with the plaintiff's rights." *Cuidado*, 404 S.W.3d at 749 (citing *Westlake*, 2009 WL 2410276).

■ Here, fact questions remain. While Defendants are correct that merely deleting data may not support a conversion claim, Gresham's alleged decision to delete the data after copying it indicates an intention to deprive MHA of the information. Assuming MHA has trade secret rights in the information, such disclosure would be is inconsistent with MHA's rights. *See Simons Broad.*, 2013 WL 9542015, at *4. Therefore, Defendants are not entitled to summary judgment on MHA's conversion claim.

### v. MHA's Breach of Fiduciary Duty Claim

■ Defendants seek summary judgment on the breach of fiduciary duty claim. "The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson*,

508 F.3d 277, 283 (5th Cir.2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.-Dallas 2006, pet. denied)). Defendants dispute the existence of a fiduciary relationship.

■ MHA's fiduciary claim cannot proceed as to Bowden. The complaint alleges that Bowden owed a fiduciary duty to MHA even after his employment ended. Doc. 36–1 at 22. MHA's response brief argues that Bowden was obligated to refrain from using confidential information acquired during his employment in a manner adverse to MHA. Doc. 103 at 42. However, even though Bowden may have signed a confidentiality agreement, "a contractual obligation does not generally give rise to a fiduciary duty." *Johnson v. Brewer & Pritchard, PC*, 73 S.W.3d 193, 203 (Tex.2002). Additionally, Texas law "does not generally recognize a fiduciary duty between employers and employees." *Pruitt v. United Chester Indus., Inc.*, 2000 WL 1210977, *2 (Tex.App.-Dallas Aug. 28, 2000, pet. denied). This is especially true where the party ceased his employment two years before the alleged breach of fiduciary duty. Finally, MHA fails to allege what confidential information Bowden acquired during his employment with MHA. *See T–N–T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd) (fiduciary duty "does not bar the use of general knowledge, skill, and experience"). Bowden's alleged attempt "to unlawfully solicit Gresham to leave his employment with MHA" does not indicate that Bowden used MHA's confidential information. Therefore, MHA's breach of fiduciary duty claim against Bowden is without merit.

■ On the other hand, MHA's claim as to Gresham survives summary judgment. While Texas law does not generally impose a fiduciary duty on employees, "[a]n informal fiduciary relationship may arise between an employee and employer." *See Navigant*, 508 F.3d at 283. Despite the existence of a fiduciary relationship, Texas courts have held that, "an at-will employee 'may properly plan to go into competition with his employer and may take active steps to do so while still employed.'" *Id.* at 284 (quoting *Johnson*, 73 S.W.3d at 201). However, this right to prepare to compete is limited. *Id.* An employee's fiduciary duty still prohibits him from appropriating his employer's trade secrets or carrying away information such as customer lists. *Id.* (citing *Johnson*, 73 S.W.3d at 202).

Here, MHA offered evidence indicating that Gresham copied files from his work computer before ending his employment. Because an employee's fiduciary duty prohibits "carrying away certain information, such as lists of customers," a question of fact exists as to whether Gresham breached a fiduciary duty. Therefore, MHA's fiduciary duty claim survives as to Gresham.

### vi. MHA's Trade Secret Misappropriation Claim

■ Next, Defendants seek summary judgment against MHA's trade secret misappropriation claim. "To state a claim for trade secret misappropriation under Texas law, a plaintiff must (1) establish that a trade secret existed; (2) demonstrate that the trade secret was acquired by the defendant through a breach of a confidential relationship or discovered by improper means; and (3) show that the defendant used the trade secret without authorization from the plaintiff." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149–50 (5th Cir.2004). Defendants dispute MHA's ability to show that the information constituted a trade secret and that Defendants used any of the information.

■ To determine whether a piece of information is protected as a trade secret,

> [A] court must examine six relevant but nonexclusive criteria: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Gen. Universal Sys., Inc. v. Lee,* 379 F.3d 131, 150 (5th Cir.2004) (citing *In re Bass,* 113 S.W.3d 735, 739–40 (Tex.2003)). In the present case, Gresham admitted to having in his possession information relating to at least one client of MHA that he obtained during his employment. *See* Doc. 137–38 (Gresham's deposition). Now, MHA's claim survives because facts indicate that at least this client information is confidential.

Despite the lack of direct evidence addressing each trade secret factor, MHA offered evidence sufficiently supporting its claim. MHA relies on Gresham's own deposition agreeing that MHA considers its marketing strategies and methods, offer letters, client worksheets, and client database to be confidential. Doc. 94 at 134–35. Gresham also testified that the client database was password protected and his computer and office had security measures. *Id.* at 135. Based on this testimony, it is reasonable to conclude that MHA's client information was not widely known by employees within MHA, let alone those outside the business. Gresham's testimony also establishes that measures were taken to safeguard the information and prevent people from acquiring or duplicating the information. Finally, MHA's President Mr. Smith intends to testify regarding the value of the information and the effort expended in developing the information. Therefore, MHA has satisfied its summary judgment burden to show the existence of a trade secret.

■ Next, Defendants dispute MHA's evidence of the information's use. "A cause of action for misappropriation of trade secrets accrues when the trade secret is actually used." *Computer Assocs. Int'l v. Altai, Inc.,* 918 S.W.2d 453, 455 (Tex.1996). " 'Use' of a trade secret means commercial use, by which a person seeks to profit from the use of the secret." *Gen. Universal Sys., Inc. v. HAL, Inc.,* 500 F.3d 444, 450 (5th Cir.2007) (quoting *Trilogy Software, Inc. v. Callidus Software, Inc.,* 143 S.W.3d 452, 464 (Tex.App.-Austin 2004, pet. denied)). In examining the use requirement, the Fifth Circuit has relied on language from the Restatement Third of Unfair Competition, which states "[a]s a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.' " *HAL,* 500 F.3d at 450.

■ Here, evidence suggests that Gresham took potentially confidential information from MHA and had it in his possession after his termination. While MHA's briefing does not allege exactly how the information was used, the Court is unwilling to find that no fact question exists as to if the information was used. MHA's trade secret misappropriation claim survives summary judgment.

### vii. MHA's Texas Theft Liability Act Claim

The Texas Theft Liability Act specifically covers theft of trade secrets. *See Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts,* 300 S.W.3d 348, 366

(Tex.App.-Dallas 2009, pet denied). Because fact questions remain as to MHA's trade secret misappropriation claim, MHA's Texas Theft Liability Act claim also survives summary judgment.

### viii.  MHA's Breach of Contract Claims

■ Next, both MHA and Defendants move for summary judgment on MHA's breach of contract claims. To succeed on a claim for breach of contract, MHA must show the existence of a valid contract, performance or tendered performance by MHA, breach by defendants, and damages sustained as a result of the breach. *Southwell v. Univ. of Incarnate Word,* 974 S.W.2d 351, 354–55 (Tex.App.-San Antonio 1998, pet. denied). Here, the dispute revolves around restrictive employment covenants in Gresham and Bowden's employment agreements with MHA. MHA claims it is entitled to summary judgment because the evidence establishes that Gresham and Bowden breached their respective agreements. Defendants disagree and argue that the restrictive covenants are unenforceable based on the Covenant Not to Compete Act, Tex. Bus. & Com.Code § 15.50 and that MHA has failed to prove breach.

### 1.  Enforceability of the Restrictive Employment Covenants

■ The Court determines the enforceability of non-competition agreements as a matter of law. *Light v. Centel Cellular Co.,* 883 S.W.2d 642, 644 (Tex.1994), *abrogated in part on unrelated grounds by Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson,* 209 S.W.3d 644 (Tex.2006). Under Texas Law,

> [A] covenant not to compete is enforceable if it is ancillary or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time,

geographical area, and scope of activities to be restrained that are reasonable and do not impose a greater restraint on trade than is necessary to protect the good will or other business interest of the promisee.

Tex. Bus. & Com.Code § 15.50(a). A restraint is unreasonable if it is broader than necessary to protect the legitimate interests of the employer. *See Cobb v. Caye Publ'g Group, Inc.,* 322 S.W.3d 780, 783 (Tex.App.-Fort Worth 2010, no pet.) (citing *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 682 (Tex.1990)). Additionally, because of the analogous nature of noncompetition and non-solicitation covenants, Texas courts apply the Covenant Not to Compete Act to non-solicitation agreements as well. *See Marsh USA Inc. v. Cook,* 354 S.W.3d 764, 767 (Tex.2011).

Here, Defendants only dispute the agreements' reasonableness. Specifically, Defendants claim Bowden's non-interference agreement is unreasonable in scope and duration, and Gresham's non-competition agreement is unreasonable in its geographic limitations and scope. Doc. 93 at 42–50; 79 at 23–33.

### a.  Bowden's Non-interference Agreement

■ Defendants argue that the Court should not enforce the non-interference provision in Bowden's employment agreement with MHA because its prohibition of any employment-related communications with MHA employees and three-year duration are unreasonable restrictions. In his employment agreement, Bowden agreed that, for three years after termination of his employment, he would not solicit or recruit MHA's employees, or communicate with them for the purpose of inducing them to terminate their employment. Doc. 94 at 185.

The Court believes Bowden's non-interference agreement is not unreasonable. First, the scope of the restriction does not "broadly prohibit any employment-related communications," as suggested by Defendants. *See* Doc. 93 at 43. It merely prevents solicitation, recruiting, or those communications made "for the purpose of inducing other employees to terminate their employment with MHA." Doc. 94 at 185. This restriction does not appear to be broader than necessary to protect MHA's legitimate interests in maintaining its employees. Additionally, Defendants fail to cite any analogous case law supporting their challenge to the scope of Bowden's non-interference agreement.

As to the time restraint, "Texas courts have held that two to five years is a reasonable time restriction in a non-competition agreement." *Salas v. Chris Christensen Sys., Inc.*, 2011 WL 4089999, at *19 (Tex.App.-Waco Sept. 14, 2011, no pet.) (citing *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex.App.-Houston [1st Dist.] 2009, pet. denied); *Arevalo v. Velvet Door, Inc.*, 508 S.W.2d 184, 186 (Tex.App.-El Paso 1974, writ ref'd n.r.e.); *Elec. Data Sys. Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex.App.-Dallas 1974, writ ref'd n.r.e.); *Weber v. Hesse Envelope Co.*, 342 S.W.2d 652, 656 (Tex.App.-Dallas 1960, no writ); *Chandler v. Mastercraft Dental Corp.*, 739 S.W.2d 460, 464 (Tex. App.-Fort Worth 1987, writ denied) (upholding a five-year time restraint)). Based on this, the Court is unwilling to find that the three year duration of Bowden's agreement is unreasonable. Bowden's non-solicitation agreement is enforceable.

### b. Gresham's Non–Competition Agreement

Next, Defendants challenge the enforceability of Gresham's agreement to not compete with MHA by performing "services of the same, similar, or greater nature to those performed by [Gresham] for [MHA]" within Dallas or any county adjacent to Dallas County for one year after termination of his employment. Doc. 94 at 200. Defendants believe the geographic limitation and broad scope are unreasonable.

Texas courts generally enforce covenants that are restricted to the geographic territory within which the bound employee worked during his employment. *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *Evan's World Travel Inc. v. Adams*, 978 S.W.2d 225, 232–33 (Tex.App.-Texarkana 1998, no writ). Defendants argue that the geographic scope of Gresham's non-competition agreement is unreasonable because Gresham's position only dealt with clients outside of Texas. Doc. 93 at 47. However, Gresham indisputably worked in the geographic region covered by the non-competition agreement. Doc. 93 at 47 (admitting that Gresham "perform[ed] his telephone sales job from MHA's Irving, Texas office"). Based on the relationship between Dallas and its adjacent counties, the covenant was reasonably restricted to the geographic territory in which Gresham worked. Also, while it is true that "limiting the applicability of the covenant to particular client bases is an acceptable substitute for a geographic limitation in a non-compete agreement," a covenant not to compete is not required to contain a client-base limitation. *See Salas*, 2011 WL 4089999, at *19. Therefore, the non-competition covenant did not need to cover the geographic territory where Gresham solicited clients for MHA. The non-competition agreement reasonably covered the location where Gresham physically worked.

Likewise, the agreement does not impose an unreasonable industry-wide employment exclusion. A non-competition

covenant "must bear some relation to the activities of the employee." *Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 387 (Tex.1991). Accordingly, a covenant "that contains an industry-wide exclusion from subsequent employment is unenforceable." *Wright v. Sport Supply Group, Inc.,* 137 S.W.3d 289, 298 (Tex.App.-Beaumont 2004, no pet.); *see John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 85 (Tex.App.-Houston [14th Dist.] 1996, writ denied). Here, Defendants claim the covenant contains an industry-wide exclusion by "prohibiting [Gresham] from working in both permanent medical staffing and temporary medical staffing." Doc. 79 at 31; 93 at 48. According to Defendants, Gresham should be able to compete in the temporary medical staffing field because MHA does not handle temporary placement. Doc. 79 at 32–33. However, Defendants fail to adequately distinguish the temporary staffing field from the permanent staffing field. While these two fields often serve different needs, the summary judgment evidence indicates there is overlap between the two fields and that they also occasionally directly compete. With this in mind, the Court is unconvinced that the relevant industry contains only permanent and temporary medical staffing. This case is similar to *Salas,* where the court found that a covenant applying to "pet supply manufacturing and distribution industry" did not bar the entire industry pertaining to pets or pet products because the employee was "not precluded from working as a dog handler and groomer as he did prior to being employed." 2011 WL 4089999, at *19. The agreement in the present case does not bar Gresham from working in other sections of the staffing industry or the medical industry. Therefore, Gresham's non-competition agreement is not an unenforceable, industry-wide exclusion. This result does not change, despite Defendants' argument that MHA reformed the restrictions in Gresham's first employment agreement and still re-hired him after he violated those provisions. Doc. 79 at 34.

## 2. Breach of Contract Against Bowden

Next, the Court examines whether Bowden breached the non-interference agreement by soliciting, recruiting, or communicating with Gresham "for the purpose of inducing [Gresham] to terminate [his] employment with MHA," as prohibited by the agreement. Doc. 94 at 185. According to MHA, the facts establish Bowden breached the non-interference agreement because Bowden admitted to communicating with Gresham regarding the termination of Gresham's employment. Doc. 62. On the other hand, Defendants argue that Bowden's communications with Gresham were not for the purpose of inducing Gresham to leave MHA because Gresham initiated the communication and had already decided to leave MHA at the time. Doc. 79 at 35–36. Notably, Gresham's intention to leave MHA is largely irrelevant when considering Bowden's alleged breach. The agreement prohibits any communication made *for the purpose* of inducement. Doc. 94 at 108. Accordingly, only Bowden's intentions are relevant. Gresham's manifested intent is only relevant to give context for interpreting Bowden's communications. In contrast, the fact that Gresham initiated the communication indicates that Bowden did not seek out Gresham in order to induce him to terminate his employment with MHA.

Based on the totality of the evidence, a fact issue remains as to whether Bowden's communications with Gresham were made for the purpose of recruiting Gresham or inducing him to leave MHA. Many of the recorded messages between Bowden and Gresham suggest that Bowden intended to induce Gresham to leave MHA and join

Consilium. *See* Doc. 78 at 205–10. For example, on September 19 Bowden sent Gresham a message stating, "[the interviewer] thought you were awesome.... [sic] Wants to move forward ASAP ... [sic] When you leave mha I need you to do one thing ... Slap Beidle in the back of the head." Doc. 78 at 208–09. While the messages strongly signal that Bowden intended to induce Gresham to leave MHA, they are not conclusive. Bowden never explicitly asked Gresham to leave MHA or come to Consilium. Additionally, Bowden testified that he "was trying to talk [Gresham] out of [leaving MHA]." Doc. 78 at 107 ("I was, like, you don't have a job yet, you don't have anything, why would you quit your job?"). Therefore, the facts do not prove Bowden's purpose sufficiently to warrant summary judgment for either party.

### 3. Breach of Contract Against Gresham

■ On the other hand, MHA is entitled to summary judgment on its breach of contract claim against Gresham. In his employment agreement, Gresham agreed to not compete with MHA by performing "services of the same, similar, or greater nature to those performed by [Gresham] for [MHA], for any person, entity, or venue which competes with the business of [MHA] (which business includes recruiting and providing temporary and permanent healthcare professionals, placements and other staffing services to healthcare professionals, healthcare facilities and other healthcare organizations)" within the Dallas area for one year. Doc. 94 at 200. Defendants dispute the evidence that Gresham performed "services of the same, similar, or greater nature" at Consilium after leaving MHA. Doc. 79 at 37–38. Specifically, Defendants argue that Gresham only performed temporary placement-related services at Consilium, as opposed to the permanent placement-related services he performed at MHA. Defendants also note that, while at Consilium, Gresham dealt with positions only on the East Coast and in Texas, but, at MHA, he dealt with positions only in the completely separate Heartland region. Doc. 79 at 38.

Based on the evidence, Gresham violated his non-competition agreement with MHA. While Gresham dealt with a different region of clients at Consilium, it is uncontested that Gresham worked in the same physical location covered by the non-competition agreement. This satisfies the geographic limitation of the agreement. Likewise, Gresham's job duties at Consilium were "similar" to those he performed at MHA. The distinction between temporary and permanent placement, emphasized by Defendants, is unavailing because Gresham's non-competition agreement contemplates temporary placement services. Doc. 94 at 200 (defining competing entities to include those that provide "temporary and permanent" placement services). Therefore, the record makes it clear that Gresham took his services to a company that competes with MHA, as defined by Gresham's non-competition agreement. This violates the terms of Gresham's contract. MHA is entitled to summary judgment on its claim of breach of contract against Gresham.

### b. MHA's Tortious Interference and Aiding Claims

Finally, the Court denies summary judgment on MHA's tortious interference and aiding claims. To succeed on a tortious interference with an existing contract claim, MHA must show there was a valid contract, Defendants willfully and intentionally interfered with that contract, the interference proximately cause harm, and MHA was actually damaged as a result. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex.2002). Here, because fact

issues remain as to Bowden's intentions, neither party is entitled to summary judgment on MHA's tortious interference and aiding and abetting claims.

## III. Conclusion

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's Motion for Summary Judgment, GRANTS in part and DENIES in part Defendants' Motion for Summary judgment, DENIES Defendants' Motion to Strike, and DENIES Defendants' Motion to Exclude Opinion Testimony of Mark Smith. Specifically, the Court grants summary judgment for MHA's breach of contract claim against Gresham. The Court also grants summary judgment against MHA's breach of fiduciary duty claim against Bowden. The remaining claims continue.

**IT IS SO ORDERED.**