# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00236-CV

---

### Rickye Henderson, Appellant

### v.

### Ali Arabzadegan, Appellee

---

**FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-23-001138, THE HONORABLE JAN SOIFER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Rickye Henderson appeals from the trial court's final judgment. Appellee Ali Arabzadegan sued Henderson, Curtis Meeks, and Top & Ball Properties, LLC to quiet title to his property and for fraud and various other claims, asserting that Henderson and Meeks tricked him into signing a quitclaim deed when he thought he was signing a lease agreement. In addition, Arabzadegan alleged that after he signed the quitclaim deed, Henderson and Meeks caused a fire at the property and sought to obtain insurance proceeds by claiming ownership of the property.

Before trial, the trial court signed several interlocutory orders, including an order for default judgment resolving all issues of liability because of Henderson's and the other defendants' "flagrant and repeated" discovery abuses, "persistent obstruction of the discovery process," and "deliberate disregard for [the trial court's] prior discovery orders and overall authority." Only the issue of damages remained for trial. Henderson and the other defendants

failed to appear for trial. After a bench trial, the trial court signed a judgment in Arabzadegan's favor that quieted title to the disputed piece of property, declared the quitclaim deed void, and awarded significant damages and attorneys' fees.[1]

In three issues, Henderson contends that the trial court (1) misapplied the unclean-hands doctrine, denying him relief based on Arabzadegan's alleged conduct; (2) erred by excluding critical evidence essential to his defense in violation of his right to due process and "by excluding newly discovered racially offensive email evidence"; and (3) erred by granting Arabzadegan's summary-judgment motion for breach of contract.[2]

For the reasons explained below, we affirm the trial court's judgment.

## BACKGROUND[3]

### Factual background

Arabzadegan owns a four-acre tract of commercial property in Austin. Arabzadegan's business, an auto-repair shop, is on the property. When the events leading to the lawsuit occurred, the property also contained another building that Arabzadegan had for many years leased out for use as a nightclub.

---

[1] The other defendants, Curtis Meeks and Top & Ball Properties, LLC, filed notices of appeal, but we dismissed their untimely appeals for want of jurisdiction.

[2] Henderson numbered as a fourth issue his request that this Court remand the case for a new trial based on his first three asserted issues.

[3] The facts in this section are derived from the parties' pleadings and from the trial court's findings of fact and conclusions of law. In his appellate brief, Henderson has not challenged the sufficiency of the evidence supporting the final judgment or the trial court's findings of fact. When findings of fact are filed and are unchallenged, as here, they are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

In September 2022, Arabzadegan leased the nightclub building to Henderson and Meeks. When the parties signed the lease agreement, Henderson and Meeks insisted on bringing a notary to the lease-signing meeting. They "secretly and deceptively" had Arabzadegan sign the signature page to a quitclaim deed that purported to transfer the entire four-acre property to Top & Ball Properties, LLC.[4]

The five-year lease, signed by Henderson and Meeks as tenants, included a term that gave them a right of first refusal if Arabzadegan decided to sell the property. The rent was $7,000 per month. On the day that Arabzadegan, Henderson, and Meeks signed the lease, Henderson and Meeks paid the partial rent for September and the full rent for October. Henderson and Meeks did not pay the November rent when it became due on November 1, 2022, and they never made another rent payment.

On November 9, 2022, a fire started in the middle of the night that destroyed a significant portion of the nightclub building. The trial court ultimately found that the defendants were responsible for causing the fire, although they blamed the fire on a contractor that they hired to do repairs on the property.

On December 16, 2022, Meeks made a written offer through a realtor to buy the property from Arabzadegan for $5.5 million. Arabzadegan testified that he rejected the offer, which proposed a seller-financed sale under which no payments would be made for the first six

---

[4] At the temporary-injunction hearing, the notary present for the lease signing testified that Arabzadegan was not actually presented with the full documents he was signing. Henderson and Meeks had a "stack of papers," including "the lease and everything," and then "they took out the signature pages to be signed." The notary saw Arabzadegan's driver's license and noted the number in her book, but he did not sign her book, which listed both the lease and quitclaim deed. Henderson and Meeks did not provide Arabzadegan with signed copies of the documents at the meeting. Arabzadegan later texted Henderson and asked him to email copies of all signature pages and any notarized documents. Henderson emailed him only the lease, not the quitclaim deed.

months.  In addition, Arabzadegan wanted $500,000 as a down payment, and Meeks told him he did not have the funds to put that amount down.

On January 2, 2023, Arabzadegan sent the defendants a lease-termination notice. He also paid the Travis County property taxes that were due in January.

On January 17, 2023, Henderson submitted a claim to their contractor's insurance carrier, seeking nearly $1,000,000 for damage to Arabzadegan's nightclub building, which the defendants intended to keep for themselves.

On February 6, 2023, Meeks recorded the quitclaim deed dated September 15, 2022, that purports to have conveyed the property from Arabzadegan to Top & Ball Properties, LLC, an LLC for which Meeks is the sole member-manager.  The deed falsely recites that Top & Ball paid Arabzadegan $1,200,000 in consideration for the quitclaim deed.

Arabzadegan did not know that he had signed a signature page for a quitclaim deed until he discovered the deception after the defendants recorded the purported quitclaim deed.  Arabzadegan never received any consideration for the purported sale of the property.[5]

On March 1, 2023, Arabzadegan filed suit to quiet title to the property and recover damages that he asserts were caused by the defendants' fraudulent scheme and the fire.

**Procedural history**

Arabzadegan sued Henderson and the other defendants for declaratory relief, injunctive relief, quiet title, trespass to try title, common-law fraud, statutory fraud, violation of Texas Civil Practice and Remedies Code Section 12.002, breach of contract, negligence, trespass, and civil conspiracy.  In May 2023, the defendants hired a construction crew to enter

---

[5]  At the temporary-injunction hearing, Meeks testified that there was no evidence that the money had been paid because they paid Arabzadegan in cash.

4

onto the property and that crew replaced Arabzadegan's lock on the property with their own lock. Arabzadegan subsequently sought and obtained a temporary injunction prohibiting them from entering or altering the property.

Henderson filed a counterclaim and a summary-judgment motion alleging that Arabzadegan breached the lease agreement by failing to obtain fire insurance. Arabzadegan later filed his own traditional and no-evidence summary-judgment motion on Henderson's breach-of-contract counterclaim, arguing that Henderson could not prove he was damaged by a lack of fire insurance on the nightclub building and that the defendants committed a prior material breach by failing to pay rent. The trial court granted Arabzadegan's motion in an interlocutory order.

As discovery progressed in the case, Henderson and the other defendants failed to produce any documents in the case. Henderson asserted patently frivolous objections, while Meeks lied about being illiterate and about evidence being destroyed in the fire.[6] Arabzadegan filed a motion to compel, requesting that the court order the defendants to produce all nonprivileged communications, documents, and recordings related to the property. In addition, he requested that the defendants be ordered to search for any documents responsive to his requests for production and to supplement their responses. In the alternative, he requested a spoliation instruction.

Before the motion to compel could be heard, Henderson brought to Arabzadegan's deposition a screenshot printout of a text message that Arabzadegan had allegedly sent to Henderson and that alluded to several payments of $300,000. Arabzadegan filed a supplement to his motion to compel, asserting that the text message was fabricated.

---

[6] Meeks testified in his deposition that his documents were stored in an office space inside the nightclub building, but that portion of the building was not destroyed in the fire.

5

Arabzadegan had submitted his cell phone for forensic examination, and his phone contained text messages with Henderson, but none of them said anything about any payment in any amount.

After the close of discovery, Henderson produced text messages that he claimed were all the texts between him and Arabzadegan. All the messages were self-serving and directed toward substantiating the claim that Henderson and Meeks had made several cash payments, totaling $1.2 million, in exchange for the property. In addition to not being on Arabzadegan's forensically examined phone, these messages had distinctive, idiosyncratic typographical errors that Meeks habitually makes and that Arabzadegan never made in any of the messages that were downloaded directly from his phone. Because of the fabricated evidence, Arabzadegan filed a second supplement to the motion to compel, asking the court to order Henderson and Meeks "to produce their electronic devices and email accounts to a neutral third-party for forensic imaging."

The trial court granted the motion to compel, finding that defendants "have committed discovery abuse in that they have actively and intentionally concealed discoverable evidence," and therefore, "a forensic examination of Defendants' electronic devices is necessary." The court ordered the defendants to "provide any cell phone, computer, email account, or other electronic device that is likely to have discoverable evidence" within seven days to an independent computer forensic expert named by the court or by Arabzadegan. The court ordered that the forensic expert would create a forensic image of the defendants' devices and accounts, search for documents from August 1, 2022 to the present time (November 2023) that contained any term provided by Arabzadegan, and provide the responsive documents to defendants to allow them to conduct a privilege search before providing the nonprivileged documents and a privilege log to Arabzadegan's counsel within seven days of receiving the

documents. The court also found that defendants likely had spoliated evidence but stated it would determine whether a spoliation instruction would be appropriate after reviewing the evidence recovered by Arabzadegan's forensic expert.

Henderson and Meeks refused to comply with the trial court's order. Henderson tried to excuse his compliance by falsely claiming that Arabzadegan or his attorneys hacked his computer and stole his phones. However, this statement conflicted with his testimony two weeks earlier at his deposition in which he asserted that the screenshot with text messages that he had brought to Arabzadegan's deposition was from his older phone that he had "under protection" and "in a safe place now."

Arabzadegan moved for a default judgment under Texas Rule of Civil Procedure 215.2 because of Henderson's and Meeks's persistent refusal to produce discoverable information or otherwise comply with the court's order. The trial court held a hearing at which evidence was admitted and witnesses testified.[7] The court granted the motion and rendered a default judgment against the defendants on liability. The court also ordered defendants to pay Arabzadegan's reasonable attorneys' fees incurred in connection with the motion to compel and his prior discovery motions.

The trial court made the following extensive findings before imposing the default judgment as a discovery sanction:

> The Court finds that a default judgment on liability should be granted against Defendants. The Court finds that Defendants' discovery abuses in this case have

---

[7] Henderson failed to get a reporter's record so neither the transcript nor the exhibits are part of the appellate record. Arabzadegan served defendants with notice of the January 5, 2024 hearing on December 18, 2023. The trial court's order indicates that it considered Arabzadegan's motion, "admissible evidence, argument of counsel and self-represented Defendant Henderson, and the case file as a whole," in granting the motion.

been flagrant and repeated, and they have shown egregious disregard for the discovery rules. Defendants have engaged in persistent obstruction of the discovery process, and they have shown a deliberate disregard for this Court's prior discovery orders and overall authority. Based on the record before it, this Court finds that Defendants' egregious discovery abuses justify a presumption that their defenses lack merit.

To reach its decision, this Court has considered and analyzed lesser remedies before imposing sanctions that preclude Defendants from presenting the merits of their liability defenses, and the Court has determined that any lesser remedies would be inadequate in light of Defendants' conduct in this case. This Court's prior admonishments and remedies have been ineffective in deterring Defendants' ongoing discovery abuses. The Court therefore rejects lesser sanctions because they have proven ineffective when previously ordered. Lesser sanctions would also benefit Defendants and increase Plaintiff's costs, without correcting Defendants' discovery abuses. In considering whether lesser remedies would be effective, the Court has also taken into account Defendants' overall bad faith and disrespect for the integrity of the judicial process, including their refusal to comply with this Court's prior discovery orders as well as evidence of false statements and fabrication of evidence.

This default judgment disposed of all the parties' claims for relief and left only the determination of damages to be heard at trial.

A jury trial was set for the damages determination. Although the defendants received proper notice of the trial setting, they failed to appear for trial. Accordingly, they waived their right to trial by jury. *See* Tex. R. Civ. P. 220. In its (amended) final judgment, the trial court noted its prior interlocutory orders, including the order granting Arabzadegan's summary-judgment motion on Henderson's breach-of-lease claim and the order granting the motion for sanctions and rendering default judgment.

Based on the evidence heard at trial, the court rendered judgment granting declaratory and injunctive relief to Arabzadegan, as well as significant money damages and attorneys' fees. The trial court awarded Arabzadegan a total of $1,655,477.63 for past damages to repair the building, lost rental income, and lost profits; a total of $324,000 for future lost rental

8

income and lost profits; $1,000,000 in past mental-anguish damages; $500,000 in future mental-anguish damages; and $3,540 in reasonable and necessary expert-witness fees. The trial court ordered that Henderson, Meeks, and Top & Ball are jointly and severally liable for all those damages. The trial court also awarded exemplary damages from each defendant in the following amounts: $5,000,000 from Meeks; $5,000,000 from Top & Ball; and $500,000 from Henderson.[8] The trial court found that each category of damages is recoverable in the amounts awarded under Arabzadegan's claim for fraud in a real-estate transaction under Texas Business & Commerce Code Section 27.01. In addition, the judgment specified Arabzadegan's other legal theories that supported subsets of those damages amounts. The trial court awarded Arabzadegan prejudgment interest in the amount of $153,437.83, postjudgment interest, and costs (for which defendants are jointly and severally liable).

The trial court awarded attorneys' fees through trial in the amount of $232,104.80 for which Henderson, Meeks, and Top & Ball are jointly and severally liable. The trial court also awarded conditional appellate attorneys' fees recoverable from any defendant who appeals the judgment in the amount of $40,000 for an appeal to the court of appeals (if decided without oral argument); an additional $20,000 if the appeal requires oral argument; $20,000 through the petition-for-review stage if appeal is made to the Texas Supreme Court; an additional $20,000 through the merits-briefing stage at the Texas Supreme Court; and $20,000 through oral argument and the completion of proceedings at the Texas Supreme Court.

---

[8] The trial court expressly found that the statutory cap on exemplary damages does not apply to this case. *See* Tex. Civ. Prac. & Rem. Code § 41.008(c)(11) (establishing that statutory cap on exemplary damages does not apply to claim against defendant from whom plaintiff seeks recovery of exemplary damages based on conduct described as felony in Penal Code Section 32.46 (fraudulent securing of document execution) if conduct was committed knowingly or intentionally).

The trial court later made findings of fact and conclusions of law, including this finding in support of the amounts of damages and attorneys' fees awarded:

> In light of the above-mentioned factors, these amounts are reasonable. Defendants' conduct is some of the most egregious wrongdoing this Court has ever seen. Defendants sought to take advantage of an elderly individual by tricking him into signing the signature page of a quitclaim deed for property he had owned for decades, and for a building he had leased and relied upon for part of his income. Then, after apparently causing a fire, they attempted to use their wrongful ownership claim to obtain insurance proceeds that rightly belonged to Plaintiff as owner of the Property. Defendants acted intentionally—indeed, maliciously—and with total disregard for the law and basic decency. If ever a case warranted significant exemplary damages, it is this one.

This appeal by Henderson followed.

## ANALYSIS

Henderson challenges the trial court's interlocutory summary judgment on the issue of breach of contract and raises two other issues related to the final judgment—he contends the trial court erred by misapplying the unclean-hands doctrine and by excluding certain evidence. In addition, although he does not raise it as an issue presented, he briefly complains that the trial court did not give due consideration to less severe sanctions before imposing the default judgment on liability. After addressing the overarching matter of the inadequacy of Henderson's briefing, we address first his challenge to the summary-judgment order and then turn to Henderson's challenges to the final judgment.

## I.     Henderson has inadequately briefed the issues on appeal.

Although courts liberally construe the pleadings and briefs of pro se litigants, we hold them to the same standards as licensed attorneys and require them to comply with the

10

applicable Texas procedural rules. *Canada v. State*, 547 S.W.3d 4, 10 (Tex. App.—Austin 2017, no pet.). As the Texas Supreme Court has explained, "There cannot be two sets of procedural rules, one for litigants with counsel and the other for litigants representing themselves. Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel." *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184-85 (Tex. 1978); *see also Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005).

Rule 38.1 of the Texas Rules of Appellate Procedure requires an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Henderson's briefing fails to comply with this rule—his brief does not contain clear arguments with appropriate citations to authorities and the record.

Henderson identifies four issues in the "statement of the issues" section of his brief.[9] Those issues are inadequately briefed. He provides no citations to the record, no citation or inadequate citation to authority, and only cursory arguments for the issues presented.

Many of his arguments are not cogent or relevant to the issues presented. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010) ("The Texas Rules of Appellate Procedure require adequate briefing."). The appellate court has no duty to brief issues for an appellant. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). Rule 38 requires appellants to discuss the facts and the relied-upon authorities required to sustain the

---

[9] As we noted earlier, Henderson's fourth issue prays that we remand for a new trial. It is not an issue that he presents for our review as an asserted error in a trial-court order or judgment.

point at issue. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id.* Moreover, "statements in a brief that are unsupported by the records cannot be accepted as facts by an appellate court." *J.W. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-23-00151-CV, 2023 WL 5208035, at *3 (Tex. App.—Austin Aug. 15, 2023, pet. denied) (mem. op.) (quoting *In re A.F.S.*, No. 05-16-01123-CV, 2018 WL 3434509 at *2 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.)).

In the absence of appropriate record citations or substantive analysis, a brief does not present an adequate appellate issue. *See generally Fredonia State Bank v. General Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (recognizing long-standing rule that error may be waived due to inadequate briefing); *see also Huey*, 200 S.W.3d at 854 ("Failure to cite applicable authority or provide substantive analysis waives an issue on appeal."). Holding Henderson to the same standard as parties represented by counsel, we conclude that he has waived his issues due to inadequate briefing. *See* Tex. R. App. P. 38.1(i); *Henderson v. Carter*, No. 03-24-00752-CV, 2025 WL 994188, at *4 (Tex. App.—Austin Apr. 3, 2025, no pet.) (mem. op.). Nonetheless, we will attempt to address Henderson's issues as best as we can. *See* Tex. R. App. P. 38.8(a)(1); *Stewart v. Texas Health & Hum. Servs. Comm'n*, No. 03-09-00226-CV, 2010 WL 5019285, at *1 n.1 (Tex. App.—Austin Dec. 9, 2010, no pet.) (mem. op.).

**II.** **The trial court properly granted summary judgment in favor of Arabzadegan on Henderson's counterclaim alleging breach of the lease.**

Henderson asserted a counterclaim alleging that Arabzadegan breached the lease agreement by failing to obtain fire insurance for the property. Arabzadegan filed a combined traditional and no-evidence summary-judgment motion on Henderson's counterclaim.[10]

**A.** **Standard of review**

We review an order granting summary judgment de novo. *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 72 (Tex. 2023). We examine the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in the nonmovant's favor and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). "Our review is limited to consideration of the evidence presented to the trial court." *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 742 (Tex. App.—El Paso 2013, no pet.) (citing *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2007, no pet.)); *see also* Tex. R. Civ. P. 166a(c), (d), and (i).[11]

---

[10] Henderson also moved for summary judgment on his counterclaim for breach of the lease. On appeal, he argues that the trial court improperly denied his summary-judgment motion. However, it does not appear that Henderson ever set his motion for hearing, and no order denying his summary-judgment motion appears in the record. The trial court's final judgment states that it "finally disposes of all pending claims and all parties, and is appealable" and that "[r]elief not expressly granted herein is DENIED."

[11] The Texas Supreme Court recently amended Texas Rule of Civil Procedure 166a, but "[o]ther than the deadline changes, Rule 166a's rewrite is not intended to substantively change the law." Tex. R. Civ. P. 166a (cmt. to 2026 change). The amendments renumbered the rule's provisions. *See* Supreme Court of Tex., Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). But because the amendments apply only to summary-judgment motions filed on or after March 1, 2026, and

To prevail on a traditional summary-judgment motion, the movant has the burden to prove that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021); Tex. R. Civ. P. 166a(c). A "no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *Wal-Mart Stores, Inc. v. Xerox State & Local Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023) (explaining that summary judgment is improper if nonmovant presents "more than a scintilla of probative evidence to raise a genuine issue of material fact"); *see also* Tex. R. Civ. P. 166a(i) (establishing that movant may obtain no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial").

When, as here, "a summary judgment fails to specify the grounds that the trial court relied upon for its ruling, we may affirm the judgment if any of the grounds advanced is meritorious." *Cuidado Casero*, 404 S.W.3d at 742 (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

### B. Failure to address each ground raised

Henderson asserted in his counterclaim that the lease terms required Arabzadegan to provide fire and casualty insurance and that because he failed to do so, Henderson was damaged because he and Meeks "could not operate the business as they had planned" after the nightclub building was destroyed by fire. Arabzadegan asserted two traditional grounds for

the filing of Arabzadegan's summary-judgment motion preceded the amendments, we refer to the provisions of Rule 166a in effect when the motion was filed. *See id.*

summary judgment: (1) Henderson was not damaged by the alleged breach of lease and (2) any such breach is excused by the defendants' prior material breach by failing to pay rent. Arabzadegan's asserted no-evidence ground is lack of evidence of the damages element of the breach-of-lease claim. To be entitled to relief on appeal, because the trial court's order granting summary judgment does not specify its reasoning, Henderson "must negate each ground upon which the judgment could have been based." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022) (explaining that appellate court may not reverse judgment without properly assigned error).

Henderson fails to address the two grounds raised in Arabzadegan's summary-judgment motion. On the no-damages ground raised in both his traditional and no-evidence motion, Arabzadegan asserted that Section 9.2 of the lease provided that "Landlord shall maintain fire and extended coverage insurance (including vandalism and malicious mischief) *on the building* in which the Tenant's leased space is located" (emphasis added), but the lease did not require Arabzadegan to name the tenants as additional insureds on the policy or entitle Henderson, as tenant, to any insurance coverage on anything he owned. Instead, the lease expressly provided that "Tenant is encouraged to maintain fire and extended coverage insurance (including vandalism and malicious mischief) on Tenant's contents in the leased premises." Therefore, Arabzadegan argued, his failure to obtain fire insurance on the building caused injury only to himself, not Henderson.

Henderson provided no evidence to support the damages claim in his summary-judgment response, and he argued only that "[t]he lease provision was put in place precisely to protect the tenants' interest in the property," but he offered no argument explaining how a policy on the building, not its contents, would have prevented any alleged damages to him. Similarly,

15

on appeal, Henderson argues only that it was error for the trial court to grant summary judgment on his counterclaim given Arabzadegan's "initial material breach by not obtaining fire insurance as required on the commencement of the lease"—he offers no argument and points to no record evidence to explain how the lack of an insurance policy on the building caused him damages. We conclude that Henderson has not adequately briefed his challenge to the summary-judgment ruling, but even if he had, based on our review of the record, the trial court could properly have granted no-evidence or traditional summary judgment on this ground.[12]  Therefore, we affirm the trial court's order on this unchallenged ground.  *See id.*; *see also Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995) ("The appellate court must affirm the summary judgment if any one of the movant's theories has merit.").  We overrule Henderson's issue challenging the summary-judgment order.

---

[12]  Henderson also fails to address Arabzadegan's other ground: Henderson's prior material breach by failing to pay November rent.  Arabzadegan argued in his summary-judgment motion that even if he was obligated to have fire insurance in place on November 9, 2022, when the fire occurred, his obligation was excused by Henderson's failure to pay the rent due on November 1, 2022.  In the trial court, Henderson argued that the failure to pay rent was excused by Arabzadegan's failure to obtain the insurance policy, relying on Texas Property Code Section 92.056.  Section 92.056 applies to residential leases, not commercial ones, and establishes procedures for a tenant to hold a landlord liable for conditions materially affecting the physical health or safety of an ordinary tenant if the landlord does not repair or remedy the condition after a reasonable time.  *See* Tex. Prop. Code §§ 92.002 ("This chapter [92] applies only to the relationship between landlords and tenants of residential rental property."), .056.  Section 92.056 does not apply in this situation.  On appeal, Henderson offers no argument rebutting this ground of prior material breach.  Because we have concluded that the trial court properly could have granted summary judgment on Arabzadegan's no-damages ground, we need not analyze whether it properly could have granted summary judgment on this additional ground.  *See* Tex. R. App. P. 47.1.

16

## III.  Henderson's challenges to the final judgment fail.

In his remaining two issues, Henderson asserts that the trial court misapplied the unclean-hands doctrine and erroneously excluded evidence.  As an initial matter, we note that Henderson does not challenge the damages portion of the judgment, and although he complains that the trial court erred by rendering a default judgment that resolved all issues of liability as a discovery sanction, he does not raise a cognizable challenge to that judgment.  We first address that argument.  Then we briefly turn to Henderson's remaining issues, which fail for a number of reasons.

### A.  The trial court did not err by rendering a default judgment on all liability issues as a discovery sanction.

Henderson makes a very limited argument that the trial court erred by rendering a default judgment on liability as a discovery sanction.  The entirety of his argument on this point follows:

> In *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991), the Texas Supreme Court stressed the importance of applying the least severe sanctions first.  Here, the trial court's issuance of a "judicial death sentence" without due process violated Rule 166a(i), as no proportional sanctions or reviews were considered.  This procedural failure warrants appellate intervention to restore procedural balance and fairness to the proceedings.[13]

Henderson does not challenge the trial court's findings related to the "flagrant and repeated" discovery abuse that "included outright fabrication of evidence."  *See McGalliard v. Kuhlmann*,

---

[13]  We note that Henderson cited Rule 166a(i), which concerns no-evidence summary-judgment motions, but for purposes of our discussion, we assume that he is complaining of the default-judgment discovery sanction.  *See* Tex. R. Civ. P. 215.2(b) (governing discovery sanctions by court in which action is pending); *see also id.* R. 215.2(b)(5) (allowing court to render judgment by default against disobedient party).

722 S.W.2d 694, 696 (Tex. 1986) (holding unchallenged findings of fact are binding on appellate court "unless the contrary is established as a matter of law, or if there is no evidence to support the finding"). As detailed above, the trial court attempted lesser sanctions and determined that they proved ineffective before finding that "Defendants' egregious discovery abuses justify a presumption that their defenses lack merit." Before ordering the default judgment on liability, the court explained,

> [i]n considering whether lesser remedies would be effective, the Court has also taken into account Defendants' overall bad faith and disrespect for the integrity of the judicial process, including their refusal to comply with this Court's prior discovery orders as well as evidence of false statements and fabrication of evidence.

The record reflects that the trial court imposed lesser sanctions, including ordering Henderson and Meeks to comply with a protocol for forensic examination of their electronic devices, which proved ineffective, before imposing the default judgment as a sanction, and further, that it considered whether lesser remedies would be effective before determining that the presumption of liability was warranted. We conclude that Henderson has not adequately briefed his challenge to the default-judgment discovery sanction, but even if he had, based on our review of the record, we hold the trial court did not abuse its discretion by rendering the default judgment. *See JNS Enter., Inc. v. Dixie Demolition, LLC*, 430 S.W.3d 444, 453 (Tex. App.—Austin 2013, no pet.) (concluding that trial court had authority to impose death-penalty sanction of dismissing plaintiffs' claims against defendants because punishment was directly related to plaintiffs' offensive conduct of fabricating evidence critical to those claims and that punishment was not excessive).

18

**B.     The trial court did not misapply the unclean-hands doctrine.**

In his appellate brief, Henderson asserts that the trial court misapplied the unclean-hands doctrine because Arabzadegan's unspecified "documented misconduct went unscrutinized, despite its direct impact on the dispute."[14]  Under the doctrine of unclean hands, a court may refuse to grant equitable relief, such as an injunction, sought by "one whose conduct in connection with the same matter or transaction has been unconscientious, unjust, or marked by a want of good faith, or one who has violated the principles of equity and righteous dealing." *In re Jim Walter Homes, Inc.,* 207 S.W.3d 888, 899 (Tex.App.—Houston [14th Dist.] 2006, orig. proceeding).  Henderson does not explain how the doctrine would apply in this case or point out where he pleaded or argued the doctrine in the proceedings below.

The unclean-hands doctrine is an affirmative defense, which must be specifically pleaded.  *See Hamaker v. Newman*, No. 02-19-00405-CV, 2022 WL 714554, at *17 n.23 (Tex. App.—Fort Worth Mar. 10, 2022, no pet.) (mem. op.) (citing Tex. R. Civ. P. 94 (regarding affirmative defenses)).  Henderson did not plead this affirmative defense.[15]  Henderson therefore waived any unclean-hands argument.  *See id.* (citing Tex. R. App. P. 33.1(a)(1)(A)).  We further note that unclean hands is an equitable remedy that is generally reserved for those cases in which "the defendant has been seriously harmed and the wrong complained of cannot be corrected

---

[14]   Henderson's brief refers to Arabzadegan's unspecified "actions which included egregious perjury and explicit directives for violence against legally present people," but he provides no citations to any evidence in the record of these alleged actions.  *See* Tex. R. App. P. 38.1 ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."), 34.2 ("The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record.").

[15]   Also, to the extent that Henderson assumes that the trial court applied this doctrine against him, we note that Arabzadegan did not plead the doctrine as an affirmative defense. Nothing in the record indicates that the trial court applied this doctrine at all.

19

without applying the doctrine." *Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 597 (Tex. App.—Austin 2015, no pet.). As explained above in the summary-judgment section, Henderson has failed to provide any evidence of harm to him from any action of Arabzadegan. Accordingly, we hold that the trial court did not misapply the unclean-hands doctrine, and we overrule this issue.

### C. On this record, we cannot conclude that the trial court erred by excluding evidence.

In Henderson's remaining issue, he contends that the trial court erred and violated his right to due process by excluding "critical evidence, including affidavits, audio recordings, video recordings[,] and contractual documents[, including] 'the lease.'"[16] Henderson again fails

---

[16] Henderson also asserts that the trial court erred by excluding "newly discovered racially offensive email evidence, which could substantively impact the fairness of the proceedings." He makes two contradictory arguments about this evidence. He contends not only that it was discovered post-trial, but also that it reveals "racial animus that undeniably impacted the trial court's judgment." Henderson fails to provide any record citation to demonstrate either that this evidence was submitted to the trial court and excluded in error or that it was admitted by the trial court and considered in error.

In addition, Henderson moves this Court to supplement the appellate record with the "newly discovered evidence," which indicates that the evidence is not part of the appellate record. *See* Tex. R. App. P. 34.1 (describing contents of appellate record). While we are required to treat an appellant's issue statements in briefs as "covering every subsidiary question that is fairly included," *id.* R. 38.1(f), an issue statement is sufficient only "if it directs the attention of the appellate court to the error about which [the] complaint is made." *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827 (Tex. 2022) (per curiam) (quoting *Anderson v. Gilbert*, 897 S.W.2d 783, 784 (Tex. 1995)). Henderson's argument about this "newly discovered evidence," which he seeks to have included in the record now, does not direct this Court's attention to a trial-court error that has been preserved for appellate review. *See* Tex. R. App. P. 33.1(a).

To the extent that Henderson seeks to include documents in the appellate record by attaching them to his brief or submitting them to this Court in motions, we cannot consider those documents. Attaching documents as exhibits or appendices to briefs or in motions to the appellate court is not formal inclusion in the record on appeal. *See, e.g.*, *Texas Windstorm Ins. Ass'n v. Jones*, 512 S.W.3d 545, 552 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Robb v. Horizon Cmtys. Improvement Ass'n, Inc.*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no

20

to provide citations to the record to show the Court when he attempted to submit the allegedly excluded evidence and to obtain a ruling on the evidence's admissibility from the trial court.[17] *See* Tex. R. Evid. 103(a)(2); *Fletcher v. Minnesota Mining & Mfg. Co.*, 57 S.W.3d 602, 606 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("To challenge exclusion of evidence by the trial court on appeal, the complaining party must present the excluded evidence to the trial court by offer of proof."); *see also* Tex. R. App. P. 33.1(a) (stating steps for preserving complaints on appeal). "As a rule, a claim, including a constitutional claim, must first be raised in the trial court in order for it to be considered on appeal." *Mitchell v. Bank of Am., N.A.*, 156 S.W.3d 622, 630 (Tex. App.—Dallas 2024, pet. denied).

Furthermore, because Henderson has not provided us with the reporter's record from the trial (at which he did not appear) or from the hearing on Arabzadegan's motion for a default judgment (for which Henderson was present), we must presume that those records would support the trial court's determination on the admissibility of evidence.[18] *See* Tex. R. App. P. 34.6(b) (establishing that appellant has burden to request in writing that official reporter prepare reporter's record); *J.W.*, 2023 WL 5208035, at *3. In the absence of a reporter's record, "we do

---

pet.). Evidence that is not contained in the appellate record is not properly before this Court. *See* Tex. R. App. P. 34.1.

[17] In its findings of fact and conclusions of law, the trial court noted that Henderson had forwarded to multiple recipients, including all Travis County Civil District Judges, among others, "dozens of emails asserting alleged facts that were never presented as evidence in any hearings before the Court." The trial court stated that "[a]ccordingly, those alleged facts are not properly before the Court as evidence, and they have been disregarded." The court further noted that if "Henderson had appeared at various evidentiary hearings and/or properly presented admissible evidence in response to various hearings, it is possible that the outcome at various hearings and the trial of this case may have been different."

[18] The only reporter's record filed in this appeal is the four-volume record from the two-day temporary-injunction hearing, which includes one volume of exhibits.

21

not know what, if any, evidence was presented to the trial court." *In re Spiegel*, 6 S.W.3d 643, 646 (Tex. App.—Amarillo 1999, no pet.). Furthermore, "we do not know what issues were presented to and ruled on by the [trial court] as generally required to preserve error." *See Loredo v. Williams*, No. 03-25-00052-CV, 2025 WL 2325166, at *2 (Tex. App.—Austin Aug. 13, 2025, no pet.) (mem. op.) (citing Tex. R. App. P. 33.1).

A trial court's error in admitting or excluding evidence is reversible only if it probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a)(1); *Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000) (describing how courts determine whether excluded evidence probably resulted in rendition of improper judgment). In the absence of a reporter's record or other record evidence demonstrating that the complained-of evidence was presented to the trial court, we cannot conclude that the trial court abused its discretion by excluding the evidence, much less that any such error was reversible. We overrule this issue.

## CONCLUSION

Having overruled Henderson's issues, we affirm the trial court's final judgment.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed: March 31, 2026

22